

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-2006

# USA v. Al-Ame

Precedential or Non-Precedential: Precedential

Docket No. 04-3769

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Al-Ame" (2006). *2006 Decisions*. Paper 1675.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1675

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3769
_____

UNITED STATES OF AMERICA

v.

ALI B. AL-AME,

Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 02-cr-00402)
District Judge: Honorable John C. Lifland

_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2005

Before: BARRY, and AMBRO, <u>Circuit Judges</u>
POLLAK*, <u>District Judge</u>

_____

*Honorable Louis H. Pollak, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

(filed January 17, 2006)

Catherine M. Brown, Esquire
P.O. Box 9058
60 Washington Street
Morristown, NJ  07963

      Counsel for Appellant

Christopher J. Christie
  United States Attorney
George S. Leone
  Chief, Appeals Division
Caroline A. Sadlowski
  Assistant U.S. Attorney
District of New Jersey
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ   07102

      Counsel for Appellee

OPINION OF THE COURT

AMBRO, <u>Circuit Judge</u>

Ali B. Al-Ame appeals from his conviction in the United States District Court for the District of New Jersey for

conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. He contends, inter alia, that the mailing at issue was not in furtherance of the fraud and therefore his conduct does not qualify as mail fraud as defined in 18 U.S.C. § 1341. For the reasons that follow, we affirm the judgment of conviction.

I. Facts and Procedural History

Al-Ame is one of over 60 individuals who have been prosecuted for their roles in a conspiracy to defraud the Educational Testing Service ("ETS"), a nonprofit testing organization headquartered in New Jersey. Among the many standardized tests developed and administered by ETS is the Test of English as a Foreign Language ("TOEFL"). Many U.S. colleges and universities require that foreign students take the TOEFL to demonstrate English proficiency, and therefore passing it is essential for many foreign students who wish to study at post-secondary educational institutions in the United States.

The conspiracy involved several dozen foreign students of Arab or Middle Eastern descent who entered into a scheme whereby they paid imposters to take the TOEFL for them. The imposters' scores were subsequently reported to colleges and universities as the students' own. Al-Ame, a foreign student enrolled at a community college in the State of Washington, paid an imposter to take the TOEFL in Al-Ame's name at a testing site in San Diego, California. On November 5, 2001, the

3

imposter went to the testing site and presented false identification stating that he was Al-Ame. ETS accepted the imposter's identification and, in accordance with the testing rules, photographed the imposter, had him sign a confidentiality agreement, and admitted him to the test. At Al-Ame's direction, the imposter instructed ETS to mail the test results to Al-Ame's home address. Consistent with these instructions, ETS mailed the results from New Jersey to Al-Ame's address in Washington, where Al-Ame intended to replace the imposter's photograph with his own and then send the results to his college.

In May 2002 the Government indicted Al-Ame on one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. The Government filed a superseding indictment in October 2002 charging the same offense. Al-Ame waived his right to a jury trial and stipulated to the relevant facts. He argued that (1) ETS's property rights in its test were not compromised as a result of his fraud, and (2) its act of mailing the test results to him was not in furtherance of the conspiracy and therefore did not constitute mail fraud under 18 U.S.C. § 1341. The District Court rejected these arguments and, based on the stipulated facts, found Al-Ame guilty of conspiracy to commit mail fraud. The Court sentenced him to two years probation and a $1,000 fine.

We disposed of Al-Ame's first objection in United States v. Hedaithy, 392 F.3d 580 (3d Cir. 2004), a case involving two of Al-Ame's co-conspirators. We held that the scheme

4

"interfered with ETS's efforts to keep its test confidential" and "defraud[ed] ETS of traditionally recognized property interests in its confidential business information and TOEFL score reports." Id. at 595, 601. Al-Ame therefore presses only the second objection that ETS's act of mailing the test results to him was not in furtherance of the conspiracy.

## II. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231, and we have jurisdiction over the appeal under 28 U.S.C. § 1291. In its brief, the Government notes its uncertainty as to whether Al-Ame is challenging the sufficiency of the superseding indictment's allegations of mail fraud or the sufficiency of the evidence of mail fraud produced at trial. Review of the former is plenary, see Hedaithy, 392 F.3d at 590 n.10 (citing United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002)), while review of the latter is subject to a deferential standard of review under which we construe all evidence in favor of the Government and will only reverse if "[no] reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hedaithy, 392 F.3d at 605. Because we conclude that the mailing from ETS to Al-Ame was in furtherance of the fraud, it is not necessary to determine under which theory his challenge arises because our holding would be the same under either standard of review.

5

III. <u>Analysis</u>

Under 18 U.S.C. § 1341, a person is guilty of mail fraud if, "having devised or intending to devise any scheme or artifice to defraud," and "for the purpose of executing such scheme or artifice or attempting so to do," he "knowingly causes to be delivered by mail or [interstate] carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any . . . matter or thing." In <u>Schmuck v. United States</u>, 489 U.S. 705 (1989) the Supreme Court reiterated that "the use of the mails need not be an essential element of the scheme" in order to constitute mail fraud; rather, it is "sufficient for the mailing to be incident to an essential part of the scheme or a step in [the] plot." <u>Id</u>. at 710-11 (internal citations and quotation marks omitted; alteration in original).

Al-Ame makes two arguments in support of his contention that ETS's act of mailing test results to him was not in furtherance of his fraudulent activities. First, he contends that his scheme was complete at the time the imposter took the test (<u>i.e.</u>, that this was the act that defrauded ETS of its property interests and therefore the subsequent mailing was not in furtherance of the fraud). He thus relies on our statement in <u>United States v. Cross</u>, 128 F.3d 145 (3d Cir. 1997) that "'mailings taking place after the object of the scheme has been accomplished, or before its accomplishment has begun, are not sufficiently closely related to the scheme to support a mail fraud

6

prosecution.'" Id. at 150 (quoting United States v. Tarnopol, 561 F.2d 466, 472 (3d Cir. 1977 (internal citations and quotation marks omitted)); see also United States v. Maze, 414 U.S. 395, 402 (1974) (holding that a credit card bill mailed to the cardholder after the defendant stole the card from the cardholder and used it to rent a room at a motel was insufficient to sustain a conviction for mail fraud because the defendant's "scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss. Indeed, from his point of view, he probably would have preferred to have the invoices misplaced by the various motel personnel and never mailed at all"); Parr v. United States, 363 U.S. 370, 392-93 (1960) (same).

We disagree with this characterization of Al-Ame's offense. It is clear from the stipulated facts that ETS's mailing of the TOEFL score to Al-Ame was a critical step in furtherance of the fraud. Al-Ame stipulated that he "knowingly and intentionally agreed to participate in and began participating in the conspiracy . . . with the hope that he would receive an acceptable score of the exam that he could then submit to an educational institution after substituting his own photograph on the score sheet for that of the imposter." Al-Ame's act of hiring an imposter to take the test for him was not, therefore, the full extent of his fraud. Indeed, hiring the imposter was merely one of several steps. Equally crucial to the scheme's success was Al-Ame's receipt of the imposter's TOEFL score in the mail, the

7

substitution of Al-Ame's photograph for that of the imposter, and the mailing of the doctored score sheet containing the imposter's scores to the community college where Al-Ame was studying. The scheme was incomplete without Al-Ame (via the imposter) knowingly causing ETS to mail the imposter's TOEFL score to him.

Second, Al-Ame asserts that ETS's mailing of the score was routine, legally required, and would have occurred with or without his fraud. He therefore relies on our statement in Cross that "routine mailings required by law[,] which are themselves intrinsically innocent even though they take place during the course of carrying out a fraudulent scheme," cannot form the basis for a mail fraud conviction. 128 F.3d at 150; see Parr, 363 U.S. at 391 ("[I]t cannot be said that mailings made or caused to be made under the imperative command of duty imposed by state law are criminal under the federal mail fraud statute, even though some of those who are so required to do the mailing . . . plan to steal, when or after received, some indefinite part of its moneys.").

We reject this argument. First, we note that the Supreme Court has definitively rejected the assertion that routine or innocent mailings are per se excluded from the scope of 18 U.S.C. § 1341. See Schmuck, 489 U.S. at 714-15. Moreover, the fact that ETS had a contractual duty to mail the scores to Al-Ame is clearly distinguishable from the legal duties at issue in Cross and Parr. In Cross the co-conspirators rigged the

8

decision-making process of a Statutory Appeals Division of the Pennsylvania Court of Common Pleas, and merely used the mail to inform litigants of the outcomes of their cases. The crime was complete before notices of disposition were mailed. "[T]he relevant mailings would, of necessity, have been made whether or not the conspiracy existed, and they would have performed precisely the same function in the absence of the conspiracy that they performed during its continuance." Cross, 128 F.3d at 151. Likewise, in Parr the co-conspirators took checks from local taxpayers intended as payment of school taxes and converted them. The Supreme Court noted that "the [School] Board was compelled to collect and receipt for the taxes by state law, which, in the circumstances here, compelled it to use . . . the mails," and thus "the legally compelled mailings . . . were not shown to have been unlawful 'step[s] in a plot'" even though "some of those who [were] required to do the mailing for the District plan[ned] to steal" the tax payments. Parr, 363 U.S. at 391.

Al-Ame's case is much different. He did not simply receive a mailing that ETS would have sent to him anyway as required by law. Rather, he fraudulently induced ETS to mail him a TOEFL score. Had Al-Ame not dispatched an imposter to take the test, no one would have taken the test in his name and therefore no score would have been mailed. This is in contrast to Cross and Parr, where the mailings would have occurred regardless of the fraud because (as in Cross) the cases would have been decided and the notices of judgment mailed even if

9

the results had not been fixed, and (as in <u>Parr</u>) the tax bills would have been sent and payments received even if school employees did not intend to convert the proceeds. To paraphrase what the Supreme Court stated in <u>Schmuck</u>, "the mailing[] in the present case . . . [was] derivative of [Al-Ame's] scheme . . . and would not have occurred but for that scheme." 489 U.S. at 713 n.7.

## IV. <u>Conclusion</u>

We conclude that Al-Ame's conduct was mail fraud as defined in 18 U.S.C. § 1341, and therefore the Government had a sufficient basis to charge him with, and the District Court had a sufficient basis to find him guilty of, conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. For the foregoing reasons, the judgment of conviction is affirmed.