**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1627
_____

UNITED STATES OF AMERICA

v.

DAVID HANCOCK,
Appellant

_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. Criminal Action No. 1-07-cr-00060-001)
District Judge:  Honorable Gregory M. Sleet
_____

Submitted Under Third Circuit LAR 34.1(a)
September 20, 2011
_____

Before:  AMBRO, CHAGARES, and ALDISERT, Circuit Judges

(Opinion filed: October 20, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

David Hancock was found guilty of attempted possession with intent to distribute

500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841 and 846.  He was

sentenced to a term of imprisonment of 120 months. Hancock appeals from the judgment of conviction. We affirm.

On April 10, 2007, Wilmington police officers executed a lawful search at the residence of a drug dealer named Luis Camacho. Among other things, officers seized Camacho's mobile phone. The next afternoon, Detective Danny Silva was processing the seized evidence when Camacho's mobile phone began ringing repeatedly. Silva eventually answered the phone, and co-defendant Miguel Alcantara stated, "I need a kilo." Silva responded that he would call Alcantara back. Prior to returning Alcantara's call, Silva retrieved a recording device. From that afternoon into the late evening, Silva, posing as a drug associate of Camacho, recorded eight conversations he had with Alcantara. Silva learned that Alcantara was brokering a one-kilogram cocaine deal on behalf of a third party for $24,000 (a price Alcantara later increased to $25,000), that the third party was present for at least one prior drug deal with Alcantara, that the third-party buyer was a short, African-American male, that the buyer and Alcantara would drive separately to the meet location, and that Alcantara would meet Silva in the alleyway alongside Camacho's residence.

Later that night, shortly after 10 p.m., Alcantara informed Silva that he had just spoken to the buyer, and that the buyer would meet him in 10-15 minutes at a location a few blocks away from Camacho's residence. Alcantara explained that the buyer would park outside of Camacho's residence, and the three men would then go inside the house to transact the cocaine deal.

2

Following that phone conversation, Wilmington police officers, including Silva, set up surveillance in the area of Camacho's residence. Shortly before 10:30 p.m., Alcantara called Silva and told him that he and the third-party buyer were en route and would be driving down Camacho's street (a one-way street) momentarily. Alcantara then called back approximately one minute later and told Silva that he had arrived at Camacho's residence. While sitting in an unmarked police vehicle, Silva observed Alcantara drive past him while speaking with Silva on his phone. Alcantara's vehicle then turned into Camacho's driveway.

Detective Silva then observed a blue Chevy Trailblazer, which was following immediately behind Alcantara's vehicle, park directly in front of Camacho's residence, across the street from Silva's unmarked police car. A short, African-American male, later identified as defendant David Hancock, got out of the vehicle and walked toward Camacho's residence. Hancock then walked into Camacho's driveway, where he would have been able to see police officers pursuing Alcantara on foot so as to place him under arrest. Hancock then turned and "trotted" back toward his own vehicle. There were no other individuals in the vicinity of Camacho's residence other than Hancock, Alcantara, and police officers.

Officers arrested Hancock before he could flee. They searched him and found he had $25,370 on his person. Hancock admitted to police that he had arrived at Camacho's residence to purchase one kilogram of cocaine for $25,000. He told police that he knew Alcantara and Camacho, and that he had been communicating with the former throughout the evening.

3

On April 13, 2007, Hancock was charged in a two-count criminal complaint with conspiracy to possess with intent to distribute 500 grams or more of cocaine, and attempted possession with intent to distribute 500 grams or more of cocaine, all in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846.

On April 19, 2007, special agents from the Drug Enforcement Administration ("DEA") arrested Hancock pursuant to the criminal complaint and a warrant authorizing his arrest. During a search of Hancock's person and residence, the DEA agents found more than $5,000 cash and three mobile telephones – one of which Hancock had used to communicate with Alcantara throughout the afternoon and evening of April 11, 2007.

Following his arrest, Hancock agreed to speak with DEA agents and Detective Silva. During the interview, Hancock again admitted that he had arrived at Camacho's house on April 11, 2007 to purchase a kilogram of cocaine for $25,000 from Alcantara's source of supply. Hancock stated that he was getting back into the drug distribution business because bills were piling up and his wife was pregnant. He also said that, due to the relative unavailability of cocaine in Wilmington at the time (which, as a result, would allow dealers to charge higher prices for cocaine in the future), he was going to take the cocaine home and "sit on it" (in order to maximize his profit by selling it at a later time).

On April 24, 2007, a grand jury indicted Hancock of conspiracy to possess with intent to distribute 500 grams or more of cocaine (Count I), and attempted possession with intent to distribute 500 grams or more of cocaine (Count II).

Thereafter, Hancock moved to suppress the evidence the police seized as well as the statements he made to them. The District Court denied Hancock's motion.

4

On February 23, 2009, the District Court conducted a non-jury trial. At the trial, Hancock denied making any incriminating statements to police. He testified that he knew nothing about a cocaine deal, and that he was only at Camacho's residence on the night in question to talk to Alcantara. Hancock did testify that the $25,370 found on him was his money.

At trial, the Government called, among other witnesses, DEA Agent Steven Murphy to provide expert testimony. Murphy testified that there are three different-sized units of cocaine – a gram, an eight-ball, and a kilogram. Murphy testified that gram and eight-ball sized units of cocaine are quantities purchased for personal consumption, but that a kilogram is a quantity purchased by a dealer for distribution. Murphy opined that the possession of a kilogram of cocaine is consistent with an intent to distribute, and that brokers typically are used in deals that involve large quantities of drugs.

On September 18, 2009, the District Court issued a memorandum opinion finding Hancock guilty of attempted possession with intent to distribute 500 grams or more of cocaine (Count II), but not guilty of conspiracy (Count I). He was sentenced to 120 months' imprisonment.

Hancock appeals his conviction, and raises three issues before us. He asserts: (1) the District Court erred in refusing to suppress the evidence seized and statements made pursuant to and after his arrest because the police lacked probable cause to arrest him; (2) the Government did not present sufficient evidence of his intent to distribute the cocaine, as the Government expert's opinion, and the District Court's finding, were based solely

on the quantity of cocaine at issue; and (3) insufficient evidence existed to show that he took a substantial step toward commission of the crime for which he was convicted.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

With regard to the denial of Hancock's motion to suppress, we review the District Court's decision "for clear error as to the underlying factual findings and we exercise plenary review over questions of law." *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006). Hancock's challenges to the sufficiency of the evidence are "subject to a deferential standard . . . under which we construe all evidence in favor of the Government[,] and will only reverse if '[no] reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Al-Ame*, 434 F.3d 614, 616 (3d Cir. 2006) (alteration in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Detective Silva had probable cause to believe that Hancock was the buyer for whom Alcantara was brokering the cocaine deal. Hancock matched the physical description of the buyer, he arrived at Camacho's residence at the time scheduled for the drug transaction, and he then walked directly toward the meeting location and entered Camacho's driveway. No one other than Hancock, Alcantara, and police officers were in the area. Thus, there was probable cause for the police to arrest Hancock.

There was also sufficient evidence to prove Hancock's intent to distribute. "When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone." *United States v.*

6

*Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992) (citing *United States v. Ocampo*, 937 F.2d 485, 488 (9th Cir. 1991); *United States v. Brown*, 921 F.2d 785, 792 (8th Cir. 1990); *United States v. Montoya*, 782 F.2d 1554, 1555 (11th Cir. 1986)); *see also Lopez v. Gonzales*, 549 U.S. 47, 53 (2006). Thus, the District Court could infer Hancock's intent to distribute from the large amount of cocaine that he intended to purchase. *See United States v. McNeil*, 887 F.2d 448, 449-50 (3d Cir. 1989). Indeed, there was more evidence than that. The Government presented the testimony of law enforcement officers recounting Hancock's confessions, including his statement that he was getting back into "the business" of drug distribution. There was also expert testimony indicating that the use of a broker in a large drug transaction shows an intent to distribute. A rational trier of fact could find, based on this evidence, that Hancock had an intent to distribute.

There was also sufficient evidence to establish that Hancock took a substantial step to commit the crime. The Government presented evidence indicating that Hancock was in repeated communication with Alcantara, that Alcantara was brokering a one-kilogram cocaine deal for a short, African-American male for $25,000, and that Hancock, a short, African-American male, arrived at the agreed-upon location at the scheduled time carrying $25,370. On questioning by police, Hancock stated that he was at Camacho's residence to purchase one kilogram of cocaine for $25,000, and that he was getting back into "the business" of drug distribution. Hancock's confessions to police establish his subjective intent, and his appearance at Camacho's residence at the appointed time carrying over $25,000 provides objective evidence corroborating his stated criminal intent. *See United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006). Hancock's

7

arguments that he did not offer anyone money for cocaine, and did not receive cocaine from anyone, are unavailing because the Government need not prove that he performed the last act necessary to commit the offense. *See United States v. Ledesma-Cuesta*, 347 F.3d 527, 531 (3d Cir. 2003) (citing *United States v. Yousef*, 327 F.3d 56, 134 (2d Cir. 2003)). Based on the evidence presented at trial, a rational trier of fact could find that Hancock took a substantial step to commit Count II.

We thus affirm Hancock's conviction.