(Slip Opinion)          OCTOBER TERM, 2006          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LOPEZ *v.* GONZALES, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 05–547.   Argued October 3, 2006—Decided December 5, 2006

The Immigration and Nationality Act (INA) lists as an "aggravated felony" "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18)," 8 U. S. C. §1101(a)(43)(B), but does not define "illicit trafficking." Title 18 U. S. C. §924(c)(2) defines "drug trafficking crime" to include "any felony punishable under the Controlled Substances Act" (CSA). Petitioner Lopez, a legal permanent resident alien, pleaded guilty to South Dakota charges of aiding and abetting another person's possession of cocaine, which state law treated as the equivalent of possessing the drug, a state felony. The Immigration and Naturalization Service (INS) began removal proceedings on the ground, *inter alia*, that Lopez's state conviction was for an aggravated felony. The Immigration Judge ultimately ruled that despite the CSA's treatment of Lopez's crime as a misdemeanor, see 21 U. S. C. §844(a), it was an aggravated felony under the INA owing to its being a felony under state law. The judge ordered Lopez removed in light of 8 U. S. C. §1229b(a)(3), which provides that the Attorney General's discretion to cancel the removal of a person otherwise deportable does not reach a convict of an aggravated felony. The Board of Immigration Appeals (BIA) affirmed, and the Eighth Circuit affirmed the BIA.

*Held:* Conduct made a felony under state law but a misdemeanor under the CSA is not a "felony punishable under the Controlled Substances Act" for INA purposes. A state offense comes within the quoted phrase only if it proscribes conduct punishable as a felony under the CSA. The Government argues that possession's felonious character as a state crime is enough to turn it into an aggravated felony under the INA because the CSA punishes possession, albeit as a misdemeanor, while §924(c)(2) requires only that the offense be punishable,

not that it be punishable as a federal felony, so that a prior conviction in state court will satisfy the felony element because the State treats possession that way. This argument is incoherent with any common-sense conception of "illicit trafficking," the term ultimately being defined. Because the statutes in play do not define "trafficking," the Court looks to the term's everyday meaning, *FDIC* v. *Meyer*, 510 U. S. 471, 476, which ordinarily connotes some sort of commercial dealing. Commerce, however, was no part of Lopez's South Dakota offense of helping someone else to possess, and certainly it is no element of simple possession, with which the State equates that crime. Nor is the anomaly of the Government's reading limited to South Dakota cases: while federal law typically treats trafficking offenses as felonies and nontrafficking offenses as misdemeanors, several States deviate significantly from this pattern. Reading §924(c) the Government's way, then, would often turn simple possession into trafficking, just what the English language counsels not to expect, and that result makes the Court very wary of the Government's position. Although the Government might still be right, there would have to be some indication that Congress meant to define an aggravated felony of illicit trafficking in an unorthodox and unexpected way. There are good reasons to think it was doing no such thing here. First, an offense that necessarily counts as "illicit trafficking" under the INA is a "drug trafficking crime" under §924(c), *i.e.,* a "felony punishable under the Controlled Substances Act," §924(c)(2). To determine what felonies might qualify, the Court naturally looks to the definitions of crimes punishable as felonies under the CSA. If Congress had meant the Court to look to state law, it would have found a much less misleading way to make its point. The Government's argument to the contrary contravenes normal ways of speaking and writing, which demonstrate that "felony punishable under the . . . Act" means "felony punishable as such under the Act" or "felony as defined by the Act," and does not refer to state felonies, so long as they would be punishable at all under the CSA. The Government's argument is not supported by the INA's statement that the term "aggravated felony" "applies to an offense described in this paragraph whether in violation of Federal or State law." 8 U. S. C. §1101(a)(43). Rather than wrenching the expectations raised by normal English usage, this provision has two perfectly straightforward jobs to do. First, it provides that a generic description of "an offense . . . in this paragraph," one not specifically couched as a state offense or a federal one, covers either one, and, second, it confirms that a state offense whose elements include the elements of a felony punishable under the CSA is an aggravated felony. Thus, if Lopez's state crime actually fell within the general term "illicit trafficking," the state felony conviction would

count as an "aggravated felony," regardless of the existence of a federal felony counterpart; and a state offense of possessing more than five grams of cocaine base is an aggravated felony because it is a felony under the CSA, 21 U. S. C. §844(a). Nothing in the provision in question suggests that Congress changed the meaning of "felony punishable under the [CSA]" when it took that phrase from Title 18 of the U. S. Code and incorporated it into Title 8's definition of "aggravated felony." Yet the Government admits that it has never begun a prosecution under 18 U. S. C. §924(c)(1)(A) where the underlying "drug trafficking crime" was a state felony but a federal misdemeanor. This telling failure in the very context in which the phrase "felony punishable under the [CSA]" appears in the Code belies the Government's claim that its interpretation is the more natural one. Finally, the Government's reading would render the law of alien removal, see 8 U. S. C. §1229b(a)(3), and the law of sentencing for illegal entry into the country, see United States Sentencing Commission, Guidelines Manual §2L1.2, dependent on varying state criminal classifications even when Congress has apparently pegged the immigration statutes to the classifications Congress itself chose. Congress would not have incorporated its own statutory scheme of felonies and misdemeanors if it meant courts to ignore it whenever a State chose to punish a given act more heavily. Pp. 4–12.

417 F. 3d 934, reversed and remanded.

SOUTER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, SCALIA, KENNEDY, GINSBURG, BREYER, and ALITO, JJ., joined. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–547

### JOSE ANTONIO LOPEZ, PETITIONER *v.* ALBERTO R. GONZALES, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[December 5, 2006]

JUSTICE SOUTER delivered the opinion of the Court.

The question raised is whether conduct made a felony under state law but a misdemeanor under the Controlled Substances Act is a "felony punishable under the Controlled Substances Act." 18 U. S. C. §924(c)(2). We hold it is not.

## I
### A

The Immigration and Nationality Act (INA) defines the term "aggravated felony" by a list that mentions "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18)." §101(a)(43)(B), as added by §7342, 102 Stat. 4469, and as amended by §222(a), 108 Stat. 4320, 8 U. S. C. §1101(a)(43)(B). The general phrase "illicit trafficking" is left undefined, but §924(c)(2) of Title 18 identifies the subcategory by defining "drug trafficking crime" as "any felony punishable under the Controlled Substances Act" or under either of two other federal statutes having no bearing on this case. Following the listing, §101(a)43 of the INA provides in its penultimate sentence that "[t]he term

[aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law" or, in certain circumstances, "the law of a foreign country." 8 U. S. C. §1101(a)(43).

An aggravated felony on a criminal record has worse collateral effects than a felony conviction simple. Under the immigration statutes, for example, the Attorney General's discretion to cancel the removal of a person otherwise deportable does not reach a convict of an aggravated felony. §1229b(a)(3). Nor is an aggravated felon eligible for asylum. §§1158(b)(2)(A)(ii), 1158(b)(2)(B)(i). And under the sentencing law, the Federal Guidelines attach special significance to the "aggravated felony" designation: a conviction of unlawfully entering or remaining in the United States receives an eight-level increase for a prior aggravated felony conviction, but only four levels for "any other felony." United States Sentencing Commission, Guidelines Manual §2L1.2 (Nov. 2005) (hereinafter USSG); *id.*, comment., n. 3 (adopting INA definition of aggravated felony).

## B

Although petitioner Jose Antonio Lopez entered the United States illegally in 1986, in 1990 he became a legal permanent resident. In 1997, he was arrested on state charges in South Dakota, pleaded guilty to aiding and abetting another person's possession of cocaine, and was sentenced to five years' imprisonment. See S. D. Codified Laws §22–42–5 (1988); §22–6–1 (Supp. 1997); §22–3–3 (1988). He was released for good conduct after 15 months.

After his release, the Immigration and Naturalization Service (INS)[1] began removal proceedings against Lopez,

---

[1] The INS's immigration-enforcement functions are now handled by the Bureau of Immigration and Customs Enforcement in the Department of Homeland Security. See *Clark* v. *Martinez*, 543 U. S. 371, 374, n. 1 (2005).

on two grounds: that his state conviction was a controlled substance violation, see 8 U. S. C. §1227(a)(2)(B)(i), and was also for an aggravated felony, see §1227(a)(2)(A)(iii). Lopez conceded the controlled substance violation but contested the aggravated felony determination, which would disqualify him from discretionary cancellation of removal. See §1229b(a)(3). At first, the Immigration Judge agreed with Lopez that his state offense was not an aggravated felony because the conduct it proscribed was no felony under the Controlled Substances Act (CSA). But after the Board of Immigration Appeals (BIA) switched its position on the issue, the same judge ruled that Lopez's drug crime was an aggravated felony after all, owing to its being a felony under state law. See *Matter of Yanez-Garcia*, 23 I. & N. Dec. 390 (2002) (announcing that BIA decisions would conform to the applicable Circuit law); *United States* v. *Briones-Mata*, 116 F. 3d 308 (CA8 1997) *(per curiam)* (holding state felony possession offenses are aggravated felonies). That left Lopez ineligible for cancellation of removal, and the judge ordered him removed. The BIA affirmed, and the Court of Appeals affirmed the BIA, 417 F. 3d 934 (CA8 2005).[2]

We granted certiorari to resolve a conflict in the Circuits about the proper understanding of conduct treated as a felony by the State that convicted a defendant of committing it, but as a misdemeanor under the CSA.[3] 547 U. S.

———————

[2] Although the Government has deported Lopez, we agree with the parties that the case is not moot. Lopez can benefit from relief in this Court by pursuing his application for cancellation of removal, which the Immigration Judge refused to consider after determining that Lopez had committed an aggravated felony.

[3] Compare *United States* v. *Wilson*, 316 F. 3d 506 (CA4 2003) (state-law felony is an aggravated felony); *United States* v. *Simon*, 168 F. 3d 1271 (CA11 1999) (same); *United States* v. *Hinojosa-Lopez*, 130 F. 3d 691 (CA5 1997) (same); *United States* v. *Briones-Mata*, 116 F. 3d 308 (CA8 1997) *(per curiam)* (same); *United States* v. *Cabrera-Sosa*, 81 F. 3d 998 (CA10 1996) (same); *United States* v. *Restrepo-Aguilar*, 74 F. 3d

___ (2006).  We now reverse.

## II

The INA makes Lopez guilty of an aggravated felony if he has been convicted of "illicit trafficking in a controlled substance . . . including," but not limited to, "a drug trafficking crime (as defined in section 924(c) of title 18)."  8 U. S. C. §1101(a)(43)(B).  Lopez's state conviction was for helping someone else possess cocaine in South Dakota, which state law treated as the equivalent of possessing the drug, S. D. Codified Laws §22–3–3, a state felony, §22–42–5.  Mere possession is not, however, a felony under the federal CSA, see 21 U. S. C. §844(a), although possessing more than what one person would have for himself will support conviction for the federal felony of possession with intent to distribute, see §841 (2000 ed. and Supp. III); *United States* v. *Kates*, 174 F. 3d 580, 582 (CA5 1999) *(per curiam)* ("Intent to distribute may be inferred from the possession of a quantity of drugs too large to be used by the defendant alone").

Despite this federal misdemeanor treatment, the Government argues that possession's felonious character as a state crime can turn it into an aggravated felony under the INA.  There, it says, illicit trafficking includes a drug trafficking crime as defined in federal Title 18.  Title 18 defines "drug trafficking crime" as "any felony punishable

_____

361 (CA1 1996) (same), with *Gonzales-Gomez* v. *Achim*, 441 F. 3d 532 (CA7 2006) (state-law felony is not an aggravated felony); *United States* v. *Palacios-Suarez*, 418 F. 3d 692 (CA6 2005) (same); *Gerbier* v. *Holmes*, 280 F. 3d 297 (CA3 2002) (same).  Two Circuits have construed the aggravated felony definition one way in the sentencing context and another in the immigration context.  Compare *United States* v. *Ibarra-Galindo*, 206 F. 3d 1337 (CA9 2000) (in sentencing case, state-law felony is an aggravated felony); *United States* v. *Pornes-Garcia*, 171 F. 3d 142 (CA2 1999) (same), with *Cazarez-Gutierrez* v. *Ashcroft*, 382 F. 3d 905 (CA9 2004) (in immigration case, state-law felony is not an aggravated felony); *Aguirre* v. *INS*, 79 F. 3d 315 (CA2 1996) (same).

under the Controlled Substances Act (21 U. S. C. 801 et seq.),” §924(c)(2), and the CSA punishes possession, albeit as a misdemeanor, see §405(a), 102 Stat. 4384, as renumbered and amended by §1002(g), 104 Stat. 4828, 21 U. S. C. §844(a). That is enough, says the Government, because §924(c)(2) requires only that the offense be punishable, not that it be punishable as a federal felony. Hence, a prior conviction in state court will satisfy the felony element because the State treats possession that way.

There are a few things wrong with this argument, the first being its incoherence with any commonsense conception of “illicit trafficking,” the term ultimately being defined. The everyday understanding of “trafficking” should count for a lot here, for the statutes in play do not define the term, and so remit us to regular usage to see what Congress probably meant. *FDIC* v. *Meyer*, 510 U. S. 471, 476 (1994). And ordinarily “trafficking” means some sort of commercial dealing. See Black’s Law Dictionary 1534 (8th ed. 2004) (defining to “traffic” as to “trade or deal in (goods, esp. illicit drugs or other contraband)”); see also *Urena-Ramirez* v. *Ashcroft*, 341 F. 3d 51, 57 (CA1 2003) (similar definition); *State* v. *Ezell*, 321 S. C. 421, 425, 468 S. E. 2d 679, 681 (App. 1996) (same). Commerce, however, was no part of Lopez’s South Dakota offense of helping someone else to possess, and certainly it is no element of simple possession, with which the State equates that crime. Nor is the anomaly of the Government’s reading limited to South Dakota cases: while federal law typically treats trafficking offenses as felonies and nontrafficking offenses as misdemeanors, several States deviate significantly from this pattern.[4]

---

[4] Several States punish possession as a felony. See, *e. g.*, S. D. Codified Laws §§22–42–5 (2004), 22–6–1 (2005 Supp.); Tex. Health & Safety Code Ann. §481.115 (West 2003); Tex. Penal Code Ann. §§12.32–12.35

Reading §924(c) the Government's way, then, would often turn simple possession into trafficking, just what the English language tells us not to expect, and that result makes us very wary of the Government's position. Cf. *Leocal* v. *Ashcroft*, 543 U. S. 1, 11 (2004) ("[W]e cannot forget that we ultimately are determining the meaning of the term 'crime of violence'"). Which is not to deny that the Government might still be right; Humpty Dumpty used a word to mean "'just what [he chose] it to mean—neither more nor less,'"[5] and legislatures, too, are free to be unorthodox. Congress can define an aggravated felony of illicit trafficking in an unexpected way. But Congress would need to tell us so, and there are good reasons to think it was doing no such thing here.[6]

First, an offense that necessarily counts as "illicit trafficking" under the INA is a "drug trafficking crime" under

_____

(West 2003); see also n. 10, *infra.* In contrast, with a few exceptions, the CSA punishes drug possession offenses as misdemeanors (that is, by one year's imprisonment or less, cf. 18 U. S. C. §3559(a)), see 21 U. S. C. §844(a) (providing for "a term of imprisonment of not more than 1 year" for possession offenses except for repeat offenders, persons who possess more than five grams of cocaine base, and persons who possess flunitrazepam), and trafficking offenses as felonies, see §841 (2000 ed. and Supp. III).

[5] L. Carroll, Alice in Wonderland and Through the Looking Glass 198 (Messner 1982).

[6] Of course, we must acknowledge that Congress did counterintuitively define some possession offenses as "illicit trafficking." Those state possession crimes that correspond to felony violations of one of the three statutes enumerated in §924(c)(2), such as possession of cocaine base and recidivist possession, see 21 U. S. C. §844(a), clearly fall within the definitions used by Congress in 8 U. S. C. §1101(a)(43)(B) and 18 U. S. C. §924(c)(2), regardless of whether these federal possession felonies or their state counterparts constitute "illicit trafficking in a controlled substance" or "drug trafficking" as those terms are used in ordinary speech. But this coerced inclusion of a few possession offenses in the definition of "illicit trafficking" does not call for reading the statute to cover others for which there is no clear statutory command to override ordinary meaning.

§924(c), that is, a "felony punishable under the [CSA]," §924(c)(2). And if we want to know what felonies might qualify, the place to go is to the definitions of crimes punishable as felonies under the Act; where else would one naturally look? Although the Government would have us look to state law, we suspect that if Congress had meant us to do that it would have found a much less misleading way to make its point. Indeed, other parts of §924 expressly refer to guilt under state law, see §§924(g)(3), (k)(2), and the implication confirms that the reference solely to a "felony punishable under the [CSA]" in §924(c)(2) is to a crime punishable as a felony under the federal Act. See *Russello* v. *United States*, 464 U. S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion" (alteration in original; internal quotation marks omitted)). Unless a state offense is punishable as a federal felony it does not count.

The Government stresses that the text does not read "punishable as a felony," and that by saying simply "punishable" Congress left the door open to counting state felonies, so long as they would be punishable at all under the CSA. But we do not normally speak or write the Government's way. We do not use a phrase like "felony punishable under the [CSA]" when we mean to signal or allow a break between the noun "felony" and the contiguous modifier "punishable under the [CSA]," let alone a break that would let us read the phrase as if it said "felony punishable under the CSA whether or not as a felony." Regular usage points in the other direction, and when we read "felony punishable under the . . . Act," we instinctively understand "felony punishable as such under the

Act" or "felony as defined by the Act."[7]   Without some
further explanation, using the phrase to cover even a
misdemeanor punishable under the Act would be so much
trickery, violating "the cardinal rule that statutory lan-
guage must be read in context." *General Dynamics Land
Systems, Inc.* v. *Cline*, 540 U. S. 581, 596 (2004) (internal
quotation marks and brackets omitted).  That is why our
interpretive regime reads whole sections of a statute
together to fix on the meaning of any one of them, and the
last thing this approach would do is divorce a noun from
the modifier next to it without some extraordinary reason.

The Government thinks it has a good enough reason for
doing just that, in the INA provision already mentioned,
that the term "aggravated felony" "applies to an offense
described in this paragraph whether in violation of Fed-
eral or State law." 8 U. S. C. §1101(a)(43).  But before this
provision is given the Government's expansive treatment,
it makes sense to ask whether it would have some use
short of wrenching the expectations raised by normal
English usage, and in fact it has two perfectly straightfor-
ward jobs to do: it provides that a generic description of
"an offense . . . in this paragraph," one not specifically
couched as a state offense or a federal one, covers either
one, and it confirms that a state offense whose elements
include the elements of a felony punishable under the CSA
is an aggravated felony.  Thus, if Lopez's state crime
actually fell within the general term "illicit trafficking,"

——————

[7] With respect to this last possibility, for purposes of §924(c)(2) the
crimes the CSA defines as "felonies" are those crimes to which it
assigns a punishment exceeding one year's imprisonment.  As the
Government wisely concedes, see Brief for Respondent 25, although for
its own purposes the CSA defines the term "felony" standing alone as
"any Federal or State offense classified by applicable Federal or State
law as a felony," 21 U. S. C. §802(13), that definition does not apply
here: §924(c)(2) refers to a felony "punishable under the [CSA]," not to
conduct punishable under some other law but defined as a felony by the
CSA.

the state felony conviction would count as an "aggravated felony," regardless of the existence of a federal felony counterpart; and a state offense of possessing more than five grams of cocaine base is an aggravated felony because it is a felony under the CSA, 21 U. S. C. §844(a).[8]

The Government's reliance on the penultimate sentence of 8 U. S. C. §1101(a)(43) is misplaced for a second reason. The Government tries to justify its unusual reading of a defined term in the criminal code on the basis of a single sentence in the INA. But nothing in the penultimate sentence of §1101(a)(43) suggests that Congress changed the meaning of "felony punishable under the [CSA]" when it took that phrase from Title 18 and incorporated it into Title 8's definition of "aggravated felony." Yet the Government admits it has never begun a prosecution under 18 U. S. C. §924(c)(1)(A) where the underlying "drug trafficking crime" was a state felony but a federal misdemeanor. See Tr. of Oral Arg. 33–36. This is telling: the failure of even a single eager Assistant United States Attorney to act on the Government's interpretation of "felony punishable under the [CSA]" in the very context in which that phrase appears in the United States Code belies the Government's claim that its interpretation is the more natural one.[9]

———————

[8] Although the parties agree that Congress added the provision that both state and federal offenses qualify as aggravated felonies to codify the BIA's decision in *Matter of Barrett*, 20 I. & N. Dec. 171 (1990), see also H. R. Rep. No. 101–681, pt. 1, p. 147 (1990) (noting that the provision reflects congressional approval of *Barrett*), our enquiry requires looking beyond Congress's evident acceptance of *Barrett*. In *Barrett*, the BIA held only that the phrase "'drug trafficking crime'" includes state "crimes analogous to offenses under the Controlled Substances Act," *Barrett*, *supra*, at 177, 178, without specifying whether a state crime must be "analogous" to a CSA felony, as opposed to a CSA misdemeanor, to count.

[9] Contrary to the Government's response at oral argument, such a prosecution should be possible under the Government's proffered

Finally, the Government's reading would render the law of alien removal, see 8 U. S. C. §1229b(a)(3), and the law of sentencing for illegal entry into the country, see USSG §2L1.2, dependent on varying state criminal classifications even when Congress has apparently pegged the immigration statutes to the classifications Congress itself chose. It may not be all that remarkable that federal consequences of state crimes will vary according to state severity classification when Congress describes an aggravated felony in generic terms, without express reference to the definition of a crime in a federal statute (as in the case of "illicit trafficking in a controlled substance"). But it would have been passing strange for Congress to intend any such result when a state criminal classification is at odds with a federal provision that the INA expressly provides as a specific example of an "aggravated felony" (like the §924(c)(2) definition of "drug trafficking crime"). We cannot imagine that Congress took the trouble to incorporate its own statutory scheme of felonies and misdemeanors if it meant courts to ignore it whenever a State chose to punish a given act more heavily.

Two examples show the untoward consequences of the Government's approach. Consider simple possession of marijuana. Not only is it a misdemeanor under the CSA, see 21 U. S. C. §844(a), but the INA expressly excludes "a single offense involving possession for one's own use of 30 grams or less" from the controlled substance violations

_____

interpretation because this subset of "drug trafficking crime[s]" still "may be prosecuted in a court of the United States," 18 U. S. C. §924(c)(1)(A), albeit at the misdemeanor level. For the same reason, the dissent's argument that our reading renders superfluous the requirement in §924(c)(1)(A) that the crime "may be prosecuted in a court of the United States" misses the mark. *Post*, at 3 (opinion of THOMAS, J.). That phrase would be no less superfluous under the dissent's preferred reading, which would still require that the offense be "capable of punishment under the Controlled Substances Act," *post*, at 1, and therefore subject to prosecution in federal court.

that are grounds for deportation, 8 U. S. C. §1227(a)
(2)(B)(i). Yet by the Government's lights, if a State makes
it a felony to possess a gram of marijuana the congres-
sional judgment is supplanted, and a state convict is
subject to mandatory deportation because the alien is
ineligible for cancellation of removal. See §1229b(a)(3).[10]
There is no hint in the statute's text that Congress was
courting any such state-by-state disparity.

The situation in reverse flouts probability just as much.
Possessing more than five grams of cocaine base is a fel-
ony under federal law. See 21 U. S. C. §844(a). If a State
drew the misdemeanor-felony line at six grams plus, a
person convicted in state court of possessing six grams
would not be guilty of an aggravated felony on the Gov-
ernment's reading, which makes the law of the convicting
jurisdiction dispositive. See Brief for Respondent 48.
Again, it is just not plausible that Congress meant to
authorize a State to overrule its judgment about the con-
sequences of federal offenses to which its immigration law
expressly refers.

True, the argument is not all one-sided. The Govern-
ment points out that some States graduate offenses of
drug possession from misdemeanor to felony depending on
quantity, whereas Congress generally treats possession
alone as a misdemeanor whatever the amount (but leaves
it open to charge the felony of possession with intent to
distribute when the amount is large). Thus, an alien

---

[10] Indeed, several States treat possession of less than 30 grams of
marijuana as a felony. See Fla. Stat. §§893.13(6)(a)–(b), 775.082(3)(d)
(2006) (punishing possession of over 20 grams of marijuana as a felony);
Nev. Rev. Stat. §§453.336(1)–(2) (2004), §§453.336(4), 193.130 (2003)
(punishing possession of more than one ounce, or 28.3 grams, of mari-
juana as a felony); N. D. Cent. Code Ann. §§19–03.1–23(6) (Lexis Supp.
2005), 12.1–32–01(4) (Lexis 1997) (same); Ore. Rev. Stat. §161.605(3)
(2003), Act Relating to Controlled Substances, §33, 2005 Ore. Laws p.
2006 (same).

convicted by a State of possessing large quantities of drugs would escape the aggravated felony designation simply for want of a federal felony defined as possessing a substantial amount. This is so, but we do not weigh it as heavily as the anomalies just mentioned on the other side. After all, Congress knows that any resort to state law will implicate some disuniformity in state misdemeanor-felony classifications, but that is no reason to think Congress meant to allow the States to supplant its own classifications when it specifically constructed its immigration law to turn on them.

In sum, we hold that a state offense constitutes a "felony punishable under the Controlled Substances Act" only if it proscribes conduct punishable as a felony under that federal law. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 05–547

JOSE ANTONIO LOPEZ, PETITIONER *v.* ALBERTO
R. GONZALES, ATTORNEY GENERAL

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE EIGHTH CIRCUIT

[December 5, 2006]

JUSTICE THOMAS, dissenting.

Jose Antonio Lopez pleaded guilty to aiding and abetting the possession of cocaine, a felony under South Dakota law. The Court holds that Lopez's conviction does not constitute an "aggravated felony" because federal law would classify Lopez's possession offense as a misdemeanor. I respectfully dissent.

I

The Immigration and Nationality Act (INA) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U. S. C. §1227(a)(2)(A)(iii). As relevant to this case, the INA defines an "aggravated felony" as "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18)." §1101(a)(43)(B). And "the term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act . . . ." 18 U. S. C. §924(c)(2).

Lopez's state felony offense qualifies as a "drug trafficking crime" as defined in §924(c)(2). A plain reading of this definition identifies two elements: First, the offense must be a felony; second, the offense must be capable of punishment under the Controlled Substances Act (CSA). No one disputes that South Dakota punishes Lopez's crime as

a felony. See S. D. Codified Laws §22–42–5 (1988). Like-
wise, no one disputes that the offense was capable of
punishment under the CSA. See 21 U. S. C. §844(a).
Lopez's possession offense therefore satisfies both ele-
ments, and the inquiry should end there.

The Court, however, takes the inquiry further by rea-
soning that only *federal* felonies qualify as drug trafficking
crimes. According to the Court, the definition of drug
trafficking crime contains an implied limitation: "any
felony punishable [as a felony] under the" CSA. The text
does not support this interpretation. Most obviously, the
language "as a felony" appears nowhere in §924(c)(2).
Without doubt, Congress could have written the definition
with this limitation, but it did not.

Furthermore, Lopez's suggested addition conflicts with
the clear meaning of §924(c)(2), which extends to both
state and federal felonies. Specifically, the definition
broadly encompasses "*any* felony" capable of being pun-
ished under the CSA. 18 U. S. C. §924(c)(2) (emphasis
added). "Read naturally, the word 'any' has an expansive
meaning . . . ." *United States* v. *Gonzales*, 520 U. S. 1, 5
(1997) (plurality opinion); see also *Small* v. *United States*,
544 U. S. 385, 397 (2005) (THOMAS, J., dissenting) ("The
broad phrase 'any court' unambiguously includes all judi-
cial bodies with jurisdiction to impose the requisite convic-
tion . . ." (footnote omitted)). The term "felony" takes its
meaning from Title 18, which classifies crimes as felonies
when punishable by death or greater than one year of
imprisonment. §3559(a). "[A]ny felony" therefore includes
both federal and state felonies: The classification depends
only on the authorized term of imprisonment. Accord-
ingly, by the plain terms of §924(c)(2), conduct prohibited
by the CSA may qualify as a "drug trafficking crime" if
under either federal law or state law the conduct is pun-
ishable by more than one year of imprisonment.

This interpretation finds support in other provisions in

which Congress placed limits on the types of drug trafficking crimes eligible for consideration. In particular, §924(c)(1)(A) proscribes the use or possession of a firearm "during and in relation to any . . . drug trafficking crime . . . *for which the person may be prosecuted in a court of the United States* . . . ." (emphasis added); see also 18 U. S. C. A. §924(c)(5) (Supp. 2006) (using identical language in proscribing the use or possession of "armor piercing ammunition"). The Court has previously interpreted this language to limit "any . . . drug trafficking crime" to federal crimes. *Gonzales*, *supra,* at 5. This language, therefore, acts as a jurisdictional limitation, carving out the subset of *federal* drug trafficking crimes and making only those eligible for use in §§924(c)(1)(A) and 924(c)(5). No similar federal-crime limitation appears in §924(c)(2). Interpreting the term "drug trafficking crime," as defined in §924(c)(2), to reach only federal felonies would render superfluous the federal-crime limitations in these other provisions. See *Duncan* v. *Walker*, 533 U. S. 167, 174 (2001) (plurality opinion) (counseling against interpretations that result in surplus language).[1]

This interpretation also finds support in the INA, which lists "illicit trafficking" and its subset of "drug trafficking crime[s]" as aggravated felonies. 8 U. S. C. §1101(a)(43)(B). The INA considers these offenses aggravated felonies "whether in violation of Federal or State law . . . ." §1101(a)(43) (penultimate sentence). Thus, by incorporating §924(c)(2)'s definition of "drug trafficking crime," the

---

[1] The majority mistakenly contends that my interpretation also renders this language superfluous. *Ante*, at 10 n. 9. As I have stated, the plain meaning of "drug trafficking crime" includes two categories of felonies—state and federal. For the limiting language in §924(c)(1)(A) to have meaning, it must exclude one of those categories. As a state felony, Lopez's possession offense does not fall within the category of federal drug trafficking crimes. Consequently, it is not eligible for use under §924(c)(1)(A).

INA supports and confirms the conclusion that the definition of "drug trafficking crime" applies to both federal and state felonies.

Moreover, the INA isolates the relevant inquiry to the prosecuting jurisdiction. Section 1227(a)(2)(A)(iii) of Title 8 makes an alien eligible for deportation only upon a *conviction* for an "aggravated felony." The conviction requirement suggests that the jurisdiction issuing the conviction determines whether the offense is a felony. This result makes sense. When faced with an actual conviction, it would be unusual to ask, hypothetically, whether that conviction would have been a felony in a different jurisdiction. Furthermore, that hypothetical inquiry could cause significant inconsistencies. For instance, where a State convicts an alien of a misdemeanor drug crime, but federal law classifies the crime as a felony, the misdemeanor conviction would constitute an aggravated felony. This anomaly does not arise when relying on the prosecuting jurisdiction's classification of the crime.

## II

The Court's approach is unpersuasive. At the outset of its analysis, the Court avers that it must look to the ordinary meaning of "illicit trafficking" because "the statutes in play do not define the term." *Ante*, at 5. That statement is incorrect. Section 1101(a)(43)(B) of Title 8 clearly defines "illicit trafficking in a controlled substance," at least in part, as "a drug trafficking crime (*as defined in section 924(c) of title 18*)." (Emphasis added.) Therefore, whatever else "illicit trafficking" might mean, it must include anything defined as a "drug trafficking crime" in §924(c)(2). Rather than grappling with this definition of the relevant term, the Court instead sets up a conflicting strawman definition.

The majority states that the ordinary meaning of "illicit trafficking" involves "some sort of commercial dealing."

*Ante*, at 5. Because mere possession does not constitute commercial dealing, the Court concludes that Lopez's possession offense cannot qualify as an "illicit trafficking" offense—or, by implication, a "drug trafficking crime." Yet even the Court admits that the term "drug trafficking crime" includes federal drug felonies, several of which are mere possession offenses. See 21 U. S. C. §844(a) (possession of more than five grams of cocaine base, possession of flunitrazepam, and repeat possession offenses). If the Court recognizes, in light of §924(c)(2), some mere possession offenses under the umbrella of "illicit trafficking," it cannot reject Lopez's conviction out of hand. Yet the Court downplays these "few exceptions" in two footnotes, concluding that "this coerced inclusion of a few possession offenses" gives no reason to "override [the] ordinary meaning" of "illicit trafficking." *Ante*, at 6, nn. 4 and 6.

The inconsistency deserves more than the Court's passing reference. By encompassing repeat possession offenses, the term "illicit trafficking" includes far more than "a few" offenses outside of its ordinary meaning. It must include *every* type of possession offense under the CSA, so long as the offender has had a previous possession offense. If defining "illicit trafficking" to include the entire range of unlawful possession does not provide a "clear statutory command to override ordinary meaning," I do not know what would.[2]

_____

[2] In its discussion of whether possession may constitute "trafficking," the Court takes its own trip "through the looking glass." See *ante,* at 6. "Commerce," according to the Court, "certainly . . . is no element of simple possession . . . ." *Ante*, at 5. Not long ago, the Court found the opposite to be true when interpreting the scope of Congress' power under the Commerce Clause. See *Gonzales* v. *Raich*, 545 U. S. 1, 22 (2005) (plurality opinion) (concluding that Congress may regulate the mere possession of marijuana as affecting "commerce"). In *Raich*, the Court fell into the very trap it purports to identify today by "turn[ing] simple possession into [commerce], just what the English language tells us not to expect." *Ante*, at 6; see also *Raich, supra,* at 57–58 (THOMAS,

   The Court, however, gives only fleeting consideration to
the text of §924(c)(2) itself.  After referencing the phrase
"felony punishable under" the CSA, the Court asks "where
else would one naturally look" other than the CSA to
determine whether a felony qualifies as a drug trafficking
crime.  *Ante*, at 7.  In response to the Court's rhetorical
question, I suggest that one might naturally look to the
conviction itself to determine whether it is a felony.  When
presented with an actual conviction, one would not expect
to look to a hypothetical prosecution to determine whether
an offender has committed a felony.

   Continuing to avoid the text of §924(c)(2), the Court
instead focuses on what the statute does not say.  It con-
cludes that Congress could have expressly referenced state
law as in §924(g)(3) and (k)(2).  *Ante*, at 7.  The response,
of course, is that Congress could just as well have defined
a "drug trafficking crime" as "any felony punishable *as a
felony* under the CSA."  Rejoining, the Court resorts to an
"instinctiv[e] understand[ing]" that the statutory defini-
tion actually means "felony as defined by the Act."  *Ibid.*
Instinct notwithstanding, we must interpret what Con-
gress actually wrote, not what it could have written.

   Furthermore, the Court's "instinct" to interpret §924(c)(2)
to mean "felony as defined by" the CSA creates an unnec-
essary ambiguity in the meaning of "felony."  The CSA
defines "felony" as "any Federal or State offense classified
by applicable Federal or State law as a felony."  21 U. S. C.
§802(13).[3]  Under the Court's interpretation, that defini-

--------

J., dissenting).  The Court's broadening of the Commerce Clause stands
in tension with its present narrow interpretation of "trafficking," which
8 U. S. C. §1101(a)(43)(B) explicitly alters to include at least some
possession offenses.

   [3] Several Courts of Appeals looked to this definition of "felony" when
construing the meaning of "drug trafficking crime."  See, *e.g., United
States* v. *Wilson*, 316 F. 3d 506, 512 (CA4 2003).  Although the Govern-
ment would clearly prevail under 21 U. S. C. §802(13), it has conceded

tion seemingly should apply. The Court concludes otherwise but never resolves the ambiguity it creates: It instead explains that "felony" is defined by the CSA as something other than the CSA's definition of "felony." *Ante*, at 8, n. 7. That explanation is, at best, unsatisfying.

After gliding past the statutory text, the Court expresses concern over the fact that the Government's interpretation allows federal immigration law to turn on varying state criminal classifications. Congress apparently did not share this concern because some definitions of "aggravated felony" explicitly turn on the State's authorized term of imprisonment, not a uniform federal classification. See 8 U. S. C. §1101(a)(43)(F), (G), (J), (P)–(T). Even the Court finds this variance "not . . . all that remarkable." *Ante*, at 10. The Court's real concern therefore has little to do with variations in state law. Rather, it worries that "a state criminal classification [may be] at odds with a federal provision." *Ibid.* But, obviously, if a state offense does not qualify under the definitions in §1101(a)(43), then the offense cannot be an "aggravated felony." As shown in Part I, though, nothing about Lopez's offense conflicts with the plain language of §924(c)(2) as incorporated into §1101(a)(43)(B). He was convicted of a "felony," and his offense was "punishable under the" CSA.

The Court also notes apparent anomalies in the Government's approach. It asserts that, under the Government's interpretation, a state felony conviction for simple possession of less than 30 grams of marijuana could be an "aggravated felony" even though the INA expressly excludes such an offense as grounds for deportation under 8 U. S. C. §1227(a)(2)(B)(i). *Ante*, at 10–11. The Court's

---

that this definition does not apply. This concession makes good sense: The definition of "drug trafficking crime" resides in Title 18, and it is therefore most natural to construe "felony" as used in that title. See, n. 1, *supra*. As discussed above, that definition as well requires that a crime be considered a felony if the State defines it as a felony.

concern has little basis in reality. Only one State author-
izes more than one year of imprisonment for possession of
over 20 grams.    See Fla. Stat. §§893.13(6)(a)–(b),
775.082(3)(a)(3) (2006). A few others classify possession of
one ounce (or 28.3 grams) as a felony. See, *e.g.,* Nev. Rev.
Stat. §§453.336(1)–(2) (2004), (4), 193.130 (2003).    The
mere possibility that a case could fall into this small gap
and lead to removal provides no ground for the Court to
depart from the plain meaning of §924(c)(2).

In fact, it is the Court's interpretation that will have a
significant effect on removal proceedings involving state
possession offenses. Federal law treats possession of large
quantities of controlled substances as felonious possession
with intent to distribute. States frequently treat the same
conduct as simple possession offenses, which would escape
classification as aggravated felonies under the Court's
interpretation. Thus, the Court's interpretation will result
in a large disparity between the treatment of federal and
state convictions for possession of large amounts of drugs.
And it is difficult to see why Congress would "authorize a
State to overrule its judgment" about possession of large
quantities of drugs any more than it would about other
possession offenses. *Ante*, at 11.

Finally, the Court admits that its reading will subject
an alien defendant convicted of a state misdemeanor to
deportation if his conduct was punishable as a felony
under the CSA. Accordingly, even if never convicted of an
actual felony, an alien defendant becomes eligible for
deportation based on a hypothetical federal prosecution.
It is at least anomalous, if not inconsistent, that an actual
misdemeanor may be considered an "aggravated felony."

## III

Because a plain reading of the statute would avoid the
ambiguities and anomalies created by today's majority
opinion, I respectfully dissent.