GREGG COSTA, Circuit Judge,
dissenting:
At least sometimes, the easy answer'is the correct one. Although the “categorical” approach used in deciding whether prior state convictions qualify as sentencing enhancements has often flummoxed the federal courts, its application in this case leads to a straightforward result. Martinez-Lugo pleaded guilty to a Georgia indictment charging him with “unlawfully possessing], with the intent to distribute, Marijuana.” That exact offense of “possession ... with intent to distribute” is enumerated in the Guidelines definition of a “drug trafficking offense” that increases the offense level for illegal reentry defendants. U.S.S.G. § 2L1.2, App. Note § l(B)(iv).
The only reason the majority departs' from the obvious is Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 185 L.Ed.2d 727 (2013). But Moncrieffe neither controls nor translates to the issue before us. As the majority explains, the question in that deportation case was whether a conviction under the Georgia Controlled Substances Act “ ‘necessarily’ [involved] conduct punishable as a felony under the” federal Controlled Substances Act. Id. at 1686. The Court held it did not because “distributing a small amount of marihuana for no remuneration” — which could have been the conduct that gave rise to the Georgia conviction in light of two intermediate appellate decisions upholding convictions in those circumstances — is a misdemeanor under federal law. Id. at 1686-87. That comparison with federal drug law mattered in Moncrieffe because only a “drug trafficking crime” that constitutes a felony under the Controlled Substances Act qualifies as an “aggravated felony” under the Immigration and Nationality Act (INA). Id. at 1683 (citing 8 U.S.C. § 1101(a)(43)(B), which incorporates the definition of drug trafficking crime in 18 U.S.C. § 924(c)).
Unlike the definition of “aggravated felony” in the INA, nothing in section 2L1.2(b)(1)(A)(i) of the Guidelines calls for a comparison between a state drug offense and the Controlled Substances Act. See Gastelum v. United States, 2013 WL 3166200, at *3-4 (E.D.Cal. June 20, 2013) (stating that Moncrieffe is not implicated when determining whether a prior state crime qualifies as a “drug trafficking offense” under section 2L1.2 of the Guidelines). What is more, a different enhancement in the same Guidelines section applies to an “aggravated felony” as that term is used in the INA. U.S.S.G. § 2L1.2(b)(1)(C) and app. Note 3(A). Reading the immigration law’s definition of aggravated felony into a different section 2L1.2 enhancement for “drug trafficking offense” thus runs counter to the principle that when a drafter “uses certain language in one part of [a legal provision] and different language in another, the court assumes different meanings were intended.” Sosa v. Alvarez-Ma-chain, 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004).
That leaves the following language from Moncrieffe’s final paragraph as the only *687 basis for finding that Martinez-Lugo’s Georgia conviction does not qualify as a drug trafficking offense:
This is the third time in seven years that we have considered whether the Government has properly characterized a low-level drug offense as “illicit trafficking in a controlled substance,” and thus an “aggravated felony.” Once again we hold that the Government’s approach defies “the ‘commonsense conception’ ” of these terms. Carachuri-Rosendo, 560 U.S., at [272-75], 130 S.Ct., at 2584-2585 (quoting Lopez, 549 U.S., at 53, 127 S.Ct. 625). Sharing a small amount of marijuana for no remuneration, let alone possession with intent to do so, “does not fit easily into the ‘everyday understanding’ ” of “trafficking,” which “ ‘ordinarily ... means some sort of commercial dealing.’ ” Carachuri-Rosendo, 560 U.S., at [272-75], 130 S.Ct., at 2584-2585 (quoting Lopez, 549 U.S., at 53-54, 127 S.Ct. 625). Nor is it sensible that a state statute that criminalizes conduct that the CSA treats as a misdemeanor should be designated an “aggravated felony.”
Moncrieffe, 133 S.Ct. at 1693. Admittedly this is broad language, but I do not read it as grafting an entirely new requirement on the section 2L1.2 “drug trafficking offense” enhancement analysis' — whether a state drug offense is congruous with a federal felony drug offense — for at least two reasons.
First, context matters and Moncrieffe as well as the two cases cited in that passage are immigration ones in which the INA expressly required the Court to determine whether a state drug conviction necessarily constituted a felony under federal drug laws. See Carachuri-Rosendo v. Holder, 560 U.S. 563, 570, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010) (“[F]or a state conviction to qualify as an ‘aggravated felony’ under the INA, it is necessary for the underlying conduct to be punishable as a federal felony.”); Lopez v. Gonzales, 549 U.S. 47, 60, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006) (holding that because there “is no reason to think Congress meant to allow the States to supplant its own classifications when it specifically constructed its immigration law to turn on them[,] ... a state offense constitutes a ‘felony punishable under the Controlled Substances Act’ only if it proscribes conduct punishable as a felony under that federal law”).
Second, Moncrieffe’s concern about serious consequences flowing from low-level drug offenses in the immigration context is handled differently in the Guidelines. In 2003, the Sentencing Commission addressed this very issue by amending section 2L1.2 to use the length of the prior state sentence as a proxy for its seriousness. See U.S.S.G.App. C, Vol. 2, amend. 632 (2013) (“This amendment responds to concerns ... that § 2L1.2 ... sometimes results in disproportionate penalties because of the 16-level enhancement....”). The Guideline uses a 16 point enhancement for a prior “drug trafficking” felony for which the sentence imposed exceeded 13 months; a 12 point enhancement for a prior “drug trafficking” felony for which the sentence imposed was 13 months or less; and a 4 point enhancement for any other felony. See U.S.S.G. § 2L1.2(b)(l)(A)-(D). Classifying a state conviction as a “drug trafficking offense” under section 2L1.2(b)(l) only when that state’s drug trafficking case law categorically comports with the federal Controlled Substances Act disrupts that attempt to calibrate the Guidelines to the seriousness of the prior drug offense based on the length of the sentence. For example, under the majority’s reasoning, a defendant who received a fifteen year sentence for a prior Georgia possession with intent to distribute offense would receive only a four *688 point enhancement (as a felony, but not a “drug trafficking offense”). But a sixteen point enhancement would apply to a defendant with a prior drug offense that resulted in a fifteen month sentence so long as the state where that conviction took place does not have a couple intermediate appellate court decisions upholding convictions for distribution that did not involve remuneration.
In addition to causing unjustified sentencing disparities, extending Moncrieffe to govern section 2L1.2(b)(l)’s definition of “drug trafficking offense” increases the complexity of applying this enhancement, which is perhaps the most commonly litigated sentencing enhancement[23] and one that is applied on an almost daily basis in the overburdened border courts where this case arose. Application of the section 2L1.2(b)(1) enhancements for prior drug offenses will now seemingly require two inquires. The first inquiry: whether the state drug offense meets the definition of “drug trafficking offense” in the Guidelines commentary. The second: whether the conduct giving rise to the state offense would necessarily constitute a felony under the Controlled Substances Act. One level of categorical analysis can be vexing enough, see, e.g., Perez-Gonzalez v. Holder, 667 F.3d 622, 624 (5th Cir.2012) (Jones, J., dissenting) (“part[ing] company” with the majority’s application of the “modified categorical approach” because “the information filed against the petitioner in the Montana court states exactly what crime [the defendant] committed and that the likelihood that the Montana statute is employed outside the categories of rape or child sexual abuse is minimal”); a second further complicates-this notoriously muddy area of the law. No other court of appeals has yet required that courts undertake both these inquiries.
Of course, given how consequential sentencing decisions are, courts should not shy away from hard work and resolving difficult questions when the law compels courts to do so and the result is a more sensible sentencing system. Because neither is the case here, I would affirm the district court.

. According to the Federal Sentencing Commission, there were 13,887 applications of a special offense characteristic adjustment under § 2L1.2 in FY 2013. U.S.S.C. Use of Guidelines and Special Offense Characteristics 52 (2013). Over 2,000 of those applications were for a "drug trafficking offense” under subsections (b)(1)(A)(i) and (ii). Id. To provide further context, the relevant Guideline, § 2L1.2, represented 24.6% of all Guidelines applications in FY 2013. Id.