**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LILIA INES SILVA,<br><br>                    Petitioner,<br><br>   v.<br><br>JEFFERSON B. SESSIONS III, Attorney General,<br><br>                    Respondent. | No.   11-73257<br><br>Agency No. A030-489-480<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 9, 2017[**]
Seattle, Washington

Before:  McKEOWN, CALLAHAN, and IKUTA, Circuit Judges.

Lilia Ines Silva ("Silva"), a native and citizen of Mexico, petitions for

review of the Board of Immigration Appeals' ("BIA") September 30, 2011 order

denying her motion to reopen her removal proceedings and her motions to compel

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

production of records from the Department of Homeland Security ("DHS"). We

have jurisdiction under 8 U.S.C. § 1252, and we deny relief.[1]

We review the BIA's denial of a motion to reopen for abuse of discretion,

but we review purely legal questions de novo. *Bonilla v. Lynch*, 840 F.3d 575, 581

(9th Cir. 2016). Due process claims in removal proceedings are reviewed de novo.

*Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc).

**1.** Generally, an alien may file one motion to reopen removal proceedings

within 90 days of the entry of a final administrative order of removal. 8 U.S.C. §

1229a(c)(7). However, "[f]ailure to meet the filing deadline is not fatal where

equitable tolling is available," and "[i]neffective assistance of counsel is one basis

for equitable tolling" of the statute of limitations for motions to reopen. *Bonilla*,

840 F.3d at 582. To trigger equitable tolling due to ineffective assistance of

counsel, one must demonstrate: "(a) that he was prevented from timely filing his

motion due to prior counsel's ineffectiveness; (b) that he demonstrated due

diligence in discovering counsel's fraud or error; and (c) that he complied with the

procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988)."

*Singh v. Holder*, 658 F.3d 879, 884 (9th Cir. 2011). In addition, the petitioner

---

[1] The facts are familiar to the parties and are restated here only as necessary to resolve the legal issues of the appeal.

2

must show that his counsel's performance was deficient, and that he suffered prejudice as a result. *See Salazar-Gonzalez v. Lynch*, 798 F.3d 917, 920 (9th Cir. 2015).

It is undisputed that Silva's motion to reopen was untimely. Silva moved to reopen her January 31, 1994 order of deportation 17 years later on February 16, 2011. Silva cites failings by her initial attorneys as excusing her delay.

Even assuming that Silva met the other criteria for equitable tolling based on ineffective assistance of counsel, her claim fails because she cannot demonstrate that she was prejudiced by the conduct of either of her attorneys. *See Correa-Rivera v. Holder*, 706 F.3d 1128, 1133 (9th Cir. 2013). Regardless of the correctness of her attorneys' earlier statements, Silva did not withdraw her application for 212(c) relief and accept deportation until after she was advised by Immigration Judge ("IJ") Kendall Warren that 212(c) relief was an important right; that she would not have a second chance to apply for it after deportation; and that accepting deportation would terminate her legal permanent resident status.

**2.** "The Supreme Court has categorically declared that once an individual has entered the United States, he is entitled to the protection of the Due Process Clause." *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014). Silva objects that, at her initial bond hearing in 1993, IJ Josephson commented that she

could "apply for Section 212(c) relief but her chances of attaining the same are not great assuming the above-stated facts are true and counsel for her did not question them at the bond hearing." Although we are doubtful that this statement constituted a due process violation, *see Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987), and that such a violation could trigger equitable tolling, Silva is not entitled to relief because she cannot demonstrate that the IJ's statement prejudiced her, *see Dent v. Holder*, 627 F.3d 365, 373 (9th Cir. 2010). Despite IJ Josephson's statement, Silva continued to seek 212(c) relief in her subsequent proceedings, and only accepted deportation after additional advisements by her attorney and IJ Warren.

**3.** Silva asserts that she relied on Officer Martinez's acts in 1994 of telling her that her deportation had been waived and giving her back her green card. She argues that, for the next 17 years, she remained in the United States—using a green card that had no expiration date—working, paying taxes, buying a house, marrying a U.S. Citizen, and gaining custody of her nephew. Whatever equities that may arise from Martinez's actions and the government's subsequent inaction, they do not bolster Silva's grounds for the motion to reopen. In addition to demonstrating that equitable tolling is warranted, Silva was required to also make a prima facie

showing that she was eligible for relief. *Young Sun Shin v. Mukasey*, 547 F.3d 1019, 1025 (9th Cir. 2008) (citing 8 C.F.R. § 1003.2(c)(1)).

Silva argues that her motion to reopen is meritorious because she "was a strong candidate for 212(c) relief," and that she is not ineligible for relief because her underlying conviction was not an aggravated felony. Neither argument is persuasive. A motion to reopen "shall not be granted . . . for the purpose of affording the alien an opportunity to apply for any form of discretionary relief . . . if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing." 8 C.F.R. § 1003.2(c)(1). Regardless of whether Silva was a strong candidate for 212(c) relief in 1994, she chose to withdraw her application, forgoing any possibility of 212(c) relief, after IJ Warren advised her of her rights and the consequences of her withdrawal. Silva has failed to proffer any new materials that undermine the validity of her voluntary and knowing withdrawal. Because Silva cannot show that she relied on Martinez's statement to her injury, she fails to demonstrate that equitable estoppel applies here. *See Watkins v. U.S. Army*, 875 F.2d 699, 709 (9th Cir. 1989) (en banc).

Silva has not shown that her underlying criminal conviction does not render her ineligible for relief. "Federal immigration law provides that any 'alien who is convicted of an aggravated felony at any time after admission is deportable.'" *Nijhawan v. Holder*, 557 U.S. 29, 32 (2009) (quoting 8 U.S.C. § 1227(a)(2)(A)(iii)). The United States Supreme Court has noted that, pursuant to 8 U.S.C. § 1101(a)(43)(B), the "Immigration and Nationality Act (INA) defines the term 'aggravated felony' by a list that mentions 'illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18),'" and that, although the general phrase "illicit trafficking" is left undefined, "§ 924(c)(2) of Title 18 identifies the subcategory by defining 'drug trafficking crime' as 'any felony punishable under the Controlled Substances Act.'" *Lopez v. Gonzales*, 549 U.S. 47, 50 (2006). The crime that Silva was convicted of, 21 U.S.C. § 846, is a felony punishable under the Controlled Substances Act. *See* 21 U.S.C. § 801 *et seq*. As such, this crime is by definition an aggravated felony.

Moreover, the 1993 order to show cause charged Silva as an alien convicted of *both* an aggravated felony, under former INA § 241(a)(2)(A)(iii), *and* of violating a law relating to a controlled substance, under former INA § 241(a)(2)(B)(i). **x** Even assuming that Silva were not convicted of an aggravated

6

felony, she has failed to demonstrate—or even argue—that she was not deportable in 1994 under former INA § 241(a)(2)(B)(i). *See* 8 U.S.C. § 1227(a)(2)(B)(i).

**4.** Silva alleges that she did not receive a complete unredacted copy of her alien file ("A-file") after two Freedom of Information Act ("FOIA") requests to DHS. Relying on *Dent*, 627 F.3d at 374, Silva argues that due process requires the immigration court to compel disclosure.

Silva's argument fails for two reasons. First, she failed to properly appeal DHS's FOIA responses. At the time Silva made her FOIA requests, former 8 C.F.R. § 103.10(d)(3) controlled and specified that "[w]hen a request for records has been denied in whole or in part, the requester may, within 30 days of its receipt, appeal the denial to the Assistant Attorney General, Office of Legal Policy . . . ." 8 C.F.R. Ch. 1, January 1, 1999, edition; *see also* Immigration Benefits Business Transformation, Increment I, 76 Fed. Reg. 53764-01 (regarding regulatory scheme effective on November 28, 2011). As Silva did not appeal the partial denials of her FOIA requests, she did not exhaust her administrative remedies, and the claim is not properly before us.[2]

---

[2] Under current FOIA regulations, Silva would be required to appeal the partial FOIA denial to the DHS Office of the General Counsel within 90 days. *See* 6 C.F.R. § 5.8. Silva has made no showing that she complied with current regulations.

Second, Silva has not demonstrated any denial of due process. We agree with IJ Scala that Silva's case is distinguishable from *Dent*, 627 F.3d 365. Before this court, Silva has failed to demonstrate how the failure to receive additional documents has prejudiced her. She does not suggest that there is any document or transcript in her file that might call into question her voluntary withdrawal of her § 212(c) application and acceptance of deportation.

**Petition DENIED.**