# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 15, 2011

Lyle W. Cayce
Clerk

No. 10-11119

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUGO REYES-MENDOZA,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, BARKSDALE, and BENAVIDES, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Hugo Reyes-Mendoza pleaded guilty of illegal reentry after removal from the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). He had a conviction of manufacturing a controlled substance in violation of section 11379.6 of the California Health and Safety Code. Because the district court classified that conviction as a "drug trafficking offense," the sentence was enhanced by sixteen levels under U.S.S.G. § 2L1.2. Reyes-Mendoza unsuccessfully objected to the

No. 10-11119

classification and was sentenced at the top of the 70-87-month sentencing range. He contests the classification of the prior conviction.

This court reviews a challenge to a preserved application and interpretation of the sentencing guidelines *de novo*. *United States v. Sandoval-Ruiz*, 543 F.3d 733, 735 (5th Cir. 2008). In determining whether a conviction meets the definition of a drug-trafficking offense for purposes of § 2L1.2(b)(1)(A)(i), we apply a strict "categorical approach," looking only to the statutory definition of the prior offense and not to the particular facts underlying the conviction. *Id.*; *Taylor v. United States*, 495 U.S. 575, 600 (1990). Where the record does not make clear the offender's offense and conviction, courts must ensure that the least culpable act that violates the statute constitutes a drug-trafficking offense. *See United States v. Gonzalez-Ramirez*, 477 F.3d 310, 315-16 (5th Cir. 2007). Accordingly, our inquiry centers on whether the least-culpable act that would violate section 11379.6 would also qualify as "drug trafficking" for purposes of § 2L1.2. If section 11379.6 is broad enough to criminalize conduct that would not constitute trafficking under § 2L1.2, then the sentence should not have been enhanced.

Section 11379.6 punishes any person "who manufactures, compounds, converts, produces, derives, processes, or prepares, either directly or indirectly by chemical extraction or independently by means of chemical synthesis, any controlled substance . . . ." The definition of "drug trafficking offense" for purposes of § 2L1.2 includes an "offense under . . . state . . . law that prohibits the manufacture . . . of a controlled substance." On its face, section 11379.6 meets the definition of "drug trafficking offense"; the word "manufacture," however, has been interpreted quite broadly for purposes of that section. Because we do not read "manufacture" that broadly for purposes of the sentencing guidelines, there are some acts that would violate section 11379.6 without qualifying as a "drug trafficking offenses" for purposes of § 2L1.2. We therefore vacate the sentence

2

No. 10-11119

and remand for resentencing without the enhancement.

## I.

The parties essentially agree on the scope of section 11379.6: that it criminalizes the synthesis, processing, or preparation of a chemical that the defendant knew would be used to make a controlled substance, even if he had no intention of making a controlled substance. The requirements of the statute are most plainly laid out in the Judicial Council of California Criminal Jury Instructions:

> The People do not need to prove that the defendant completed the process of manufacturing or producing a controlled substance. Rather, the People must prove that the defendant knowingly participated in the beginning or intermediate steps to process or make a controlled substance. Thus, the defendant is guilty of this crime if the People have proved that:
>
> 1. The defendant engaged in the synthesis, processing, or preparation of a chemical that is not itself a controlled substance; AND
>
> 2. The defendant knew that the chemical was going to be used in the manufacture of a controlled substance.

Judicial Council of California Criminal Jury Instructions § 2330, Manufacturing a Controlled Substance (HEALTH & SAF. CODE, § 11379.6(a), (b)) (LexisNexis Fall 2008 ed.). Section 11379.6 requires knowledge that a controlled substance would be produced, and that requirement applies where the defendant was producing only a precursor to a controlled substance. *People v. Coria*, 21 Cal. 4th 868 (Cal. 1999).

Therefore, section 11379.6 would apply to the extraction of a precursor to methamphetamine from pills, provided the defendant knew the resulting precursor would eventually be used for the production of methamphetamine. He would not have to intend specifically to produce methamphetamine or even intend that

No. 10-11119

it ever be produced. For example, he would be guilty under this statute if he extracted a precursor and sold it to someone he knew would use it to produce methamphetamine.

## II.

The breadth of the term "manufacture" is not as well defined for purposes of § 2L1.2. No caselaw has been brought to our attention that directly discusses whether making a precursor with knowledge that it will be used to manufacture a controlled substance falls within § 2L1.2's definition of "manufacture." Both a plain reading of the phrase "manufacture a controlled substance" and caselaw point, however, to the exclusion of manufacturing a precursor from § 2L1.2's definition of "manufacture."

A plain reading of the phrase "manufacture a controlled substance" seems to exclude production of a precursor without an intent eventually to produce the finished product. A manufacturer of rubber would not normally be considered a manufacturer of tires, even if he knows a tire company will buy his rubber. It would also strain language to say that someone who makes rubber with the knowledge that it will eventually be used in tires is "attempting to make tires."

We take comfort that this plain reading is also the most harmonious with the reported cases. In *United States v. Arizaga-Acosta*, 436 F.3d 506, 508 (5th Cir. 2006), we held that possession of a precursor with intent to manufacture a controlled substance was not a "drug trafficking offense" for purposes of 2L1.2. We also held that possession of a precursor with intent to manufacture was not substantially equivalent to attempted manufacture of a controlled substance. *Id*. Because the possession of a precursor necessarily happens after its production, it would be in tension with prior caselaw to construe the manufacture of a precursor as an attempted manufacture of the controlled substance. With such a holding, the event that is closer to the eventual danger (the possession of the

precursor) would not constitute an attempt, but the more distant event would.

This result is also in line with *United States v. Forester*, 836 F.2d 856, 859-61 (5th Cir. 1988), in which we held that the defendant could not be sentenced for both production of a precursor with intent to manufacture a controlled substance and the attempted manufacture of a controlled substance. We concluded that these were separate crimes, and separate convictions were possible. Only one sentence was appropriate, however, because the production of the precursor included no additional elements that were not included in the attempted production of a controlled substance. *Id.* If Congress intended the production of a precursor always to constitute attempted production of a controlled substance, then the statute criminalizing the production of the precursor would be superfluous; it would criminalize no new conduct. Therefore, the canon against surplusage counsels against construing "manufacture" so broadly as to make the production of a precursor always sufficient to qualify as an attempt.

## III.

The California statute applies to production of a precursor with knowledge that it will be used to produce a controlled substance. That statute would criminalize the production of a precursor for sale to a third party who uses it to manufacture a controlled substance. If the federal guideline is construed according to the plain meaning of "manufacture a controlled substance," it would not criminalize such conduct. Therefore, the least culpable act that violates § 11379.6 would not fall under the definition of "manufacture" for purposes of § 2L1.2.

The government argues that the production of a precursor with the intent to sell it to a third party would still constitute aiding and abetting the manufacture of a controlled substance, even if "manufacture" were construed to include only the production of the finished product. Aiding and abetting, however, requires the offense to be completed. *See United States v. McCoy*, 539 F.2d 1050,

1064 (5th Cir. 1976).  Therefore, the California statute would still be broader than the federal guideline, because the statute does not include an element that the controlled substance actually be produced.

The government also maintains that even if "manufacture" requires production of the final product, any production of a precursor would be an attempt. That is not always true, because the *mens rea* of attempt is higher than the *mens rea* of the California statute.  Attempt requires intent to commit the underlying offense, *United States v. Polk*, 118 F.3d 286, 291 (5th Cir. 1997), but the California statute requires only knowledge that the precursor will be used to produce the controlled substance.  *See Coria*, 21 Cal. 4th at 881.

## IV.

A procedural error during sentencing is harmless if "the error did not affect the district court's selection of the sentence imposed."  *Williams v. United States*, 503 U.S. 193, 203 (1992).  The burden of establishing that an error is harmless rests on the party seeking to uphold the sentence.  *United States v. Delgado-Martinez*, 564 F.3d 750 (5th Cir. 2009).  The government has not even attempted to argue that the error was harmless. Reyes-Mendoza's sentence was at the maximum end of the guideline range with the enhancement, and it exceeds the upper bound of the range when it is properly calculated.  There is no evidence that the district court would have sentenced above the proper sentencing range.

Having determined that the guideline calculation was in error and that the error was not harmless, we VACATE the sentence and REMAND for resentencing.