# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40924

United States Court of Appeals
Fifth Circuit

**FILED**

December 11, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUAN FRANCISCO MARTINEZ-LUGO,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, DENNIS, and COSTA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-Appellant Juan Francisco Martinez-Lugo appeals from the district court's application of a 16-level sentence enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) for his having been removed following a conviction for a drug trafficking offense for which the sentence was greater than 13 months based upon Martinez's 2002 Georgia conviction for possession with

No. 13-40924

intent to distribute marijuana. For the reasons set out below, we VACATE the sentence and REMAND.

## FACTS AND PROCEEDINGS

Martinez-Lugo was charged in an indictment with being unlawfully present in the United States following removal. He pleaded guilty to the indictment without the benefit of a written plea agreement. In the Presentence Report ("PSR"), the Probation Office determined that Martinez-Lugo's base offense level was eight. It applied a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) for having been removed following a conviction for a drug trafficking offense for which the sentence was greater than 13 months. The recommendation was based on Martinez-Lugo's 2002 Georgia conviction for possession with intent to distribute marijuana, for which Martinez-Lugo was sentenced to five years of imprisonment with two of those years probated.

Applying a two-level reduction for acceptance of responsibility, the Probation Office determined that Martinez-Lugo's total offense level was 22. Based upon Martinez-Lugo's total offense level of 22 and criminal history category of IV, it calculated that his guidelines sentence range was 63-78 months of imprisonment and that his guidelines sentence range would be 57-71 months of imprisonment if he were granted an additional one-level reduction for acceptance of responsibility. As an attachment to the PSR, the Probation Office included the accusation, guilty plea documentation, and final judgment from Martinez-Lugo's 2002 conviction, and those documents showed that Martinez-Lugo had been convicted under GA. CODE ANN. § 16-13-30(j)(1) (2002).

2

No. 13-40924

When the case was first called for sentencing, Martinez-Lugo raised an objection to the 16-level enhancement on the ground that his prior Georgia conviction did not qualify as a "drug trafficking offense" under the Supreme Court's reasoning in *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). The district court granted Martinez-Lugo a continuance, and he subsequently filed a written objection to the PSR on that basis.

The district court overruled Martinez-Lugo's objection. The Government moved for the additional one-level reduction for acceptance of responsibility, and the district court granted the motion. The district court additionally ruled that Martinez-Lugo's criminal history category was "artificially exaggerated" and that a criminal history category of III was more accurate. Based upon a total offense level of 21 and criminal history category of III, it determined that Martinez-Lugo's guidelines sentence range was 46-57 months of imprisonment. It sentenced Martinez-Lugo to 46 months of imprisonment without a term of supervised release. Martinez-Lugo filed a timely notice of appeal on the basis that the district court misapplied the 16-level sentence enhancement for a "drug trafficking offense" under § 2L1.2(b)(1)(A)(i).

## STANDARD OF REVIEW

Martinez-Lugo is not the first appellant to argue that, following *Moncrieffe*, a conviction "for giving away or offering to give away [*i.e.*, for no remuneration] a controlled substance" does not constitute "a drug trafficking

offense under . . . § 2L1.2(b)(1)(A)(i)."[1] He is, however, the first to have preserved the error by raising the objection at the district court, so we are not limited to plain error review, which must deny relief where, as here, "the issue is subject to reasonable debate and the error is not readily apparent."[2]

Because Martinez-Lugo preserved his objection to the sentence enhancement, "[w]e review the district court's interpretation and application of the sentencing guidelines *de novo* and its findings of fact for clear error."[3] "We review a district court's conclusion that a prior state conviction constitutes a drug trafficking offense *de novo*."[4]

## DISCUSSION

On appeal, Martinez-Lugo renews his argument that his prior conviction under GA. CODE ANN. § 16-13-30(j)(1) (2002) does not constitute a "drug trafficking offense" for purposes of applying the sentence enhancement of § 2L1.2(b)(1)(A)(i). Martinez-Lugo points to the Supreme Court's emphasis in *Moncrieffe* that "trafficking" generally requires remuneration,[5] and he argues

---

[1] *United States v. Perez-Melgarejo*, 552 F. App'x 327, 328 (5th Cir. 2014); *see also United States v. Gomez-Martinez*, 566 F. App'x 308 (5th Cir. 2014), and *United States v. Cortes-Tolentino*, — F. App'x —, No. 13-40943, 2014 WL 3930463 (5th Cir. 2014).

[2] *Perez-Melgarejo*, 552 F. App'x at 328. Even under plain error review, we have vacated a sentence enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i) where the state statute clearly exceeded the list of prohibited behavior set out in the Application Note to the Guideline. *See United States v. Garza-Lopez*, 410 F.3d 268 (5th Cir. 2005) (vacating sentence where the California statute at issue plainly included elements not listed in the then-current version of the Application Note to § 2L1.2(b)(1)(A)(i)).

[3] *United States v. Baker*, 742 F.3d 618, 620 (5th Cir. 2014) (citing *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)).

[4] *United States v. Lopez-Salas*, 513 F.3d 174, 178 (5th Cir. 2008) (citing *United States v. Gutierrez-Ramirez*, 405 F.3d 352, 355-56 (5th Cir. 2005)).

[5] *See Moncrieffe*, 133 S. Ct. at 1693.

that the Georgia statute is overbroad because it also criminalizes possession with intent to distribute for no remuneration.[6] On the other hand, the Application Note to § 2L1.2(b)(1)(A)(i) seems to define as a "drug trafficking offense" precisely the type of conviction at issue here.

Section 2L1.2(b)(1)(A)(i) provides:

> (b) Specific Offense Characteristic
>
> > (1) Apply the Greatest:
> >
> > If the defendant previously was deported, or unlawfully remained in the United States, after—
> >
> > > (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; . . . increase by 16 levels if the conviction receives criminal history points under Chapter Four . . . .[7]

Section 2L1.2(b)(1)(A)(i) itself does not define "drug trafficking offense," but the Application Note to § 2L1.2(b)(1)(A)(i) states:

> "Drug trafficking offense" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the *possession of a controlled substance* (or a counterfeit substance) *with*

---

[6] As the Supreme Court recognized in *Moncrieffe* when analyzing the same Georgia statute, "we know that Georgia prosecutes this offense when a defendant possesses only a small amount of marijuana . . . and that 'distribution' does not require remuneration, *see*, *e.g.*, *Hadden v. State*, 181 Ga. App. 628, 628–629, 353 S.E.2d 532, 533–534 (1987)." *Id.* at 1686.

[7] U.S.S.G. § 2L1.2(b)(1)(A)(i).

No. 13-40924

> *intent to* manufacture, import, export, *distribute*, or
> dispense.[8]

The Georgia statute under which Martinez-Lugo was convicted provides:

> (j) (1) It is unlawful for any person to possess, have
> under his control, manufacture, deliver, distribute,
> dispense, administer, purchase, sell, or *possess with
> intent to distribute marijuana.*[9]

We must determine whether the Georgia statute, which on its face seems to fall directly within the Application Note to § 2L1.2(b)(1)(A)(i), is in fact a "drug trafficking offense" subject to the 16-level enhancement.

### I. Categorical and Modified Categorical Approaches

To determine whether a prior conviction qualifies as a drug trafficking offense, this court employs the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990), comparing the elements of the prior offense—rather than the facts underlying the conviction—with the definition of a "drug trafficking offense" under § 2L1.2(b)(1)(A).[10] "Where the record does not make clear the offender's offense and conviction, courts must ensure that the least culpable act that violates the statute constitutes a drug-trafficking offense. Accordingly, our inquiry centers on whether the least-culpable act that would violate [the state statute] would also qualify as 'drug trafficking' for purposes of § 2L1.2."[11]

---

[8] U.S.S.G. § 2L1.2(b)(1)(A)(i), Application Note § 1(B)(iv) (emphasis added).

[9] GA. CODE ANN. § 16-13-30(j)(1) (2002) (emphasis added).

[10] *United States v. Reyes-Mendoza*, 665 F.3d 165, 166-67 (5th Cir. 2011).

[11] *Id.*

No. 13-40924

If the statute at issue has disjunctive elements, this court may apply a modified categorical approach to ascertain which of the disjunctive elements formed the basis of the conviction.[12] In making this determination, this court may consider "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."[13] If the statute cannot be narrowed, this court considers "whether the least culpable act constituting a violation of that statute constitutes" a drug trafficking offense for purposes of § 2L1.2(b)(1)(A)(i).[14]

Martinez-Lugo does not dispute that his prior conviction was a felony under Georgia law, that he received criminal history points, or that the sentence imposed exceeded 13 months. Additionally, the parties agree that the *Shepard* documents only narrow down Martinez-Lugo's prior conviction to a conviction for possession of marijuana with intent to distribute under GA. CODE ANN. § 16-13-30(j)(1). On its face, this would not seem to be a problem because, as noted above, the Application Note to § 2L1.2(b)(1)(A)(i) explicitly defines "drug trafficking offense" to include "possession of a controlled substance . . . with intent to . . . distribute." Thus, this appears at first blush to be an easy case. It is not so.

We must give great weight to the commentary to the Guidelines, such as the Application Note at issue here, particularly where it interprets a Guideline.

---

[12] *United States v. Miranda-Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012).

[13] *Shepard v. United States*, 544 U.S. 13, 16 (2005).

[14] *United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008) (internal quotation marks and citations omitted).

Indeed, "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal."[15] That deference is not limitless, however: "We have reason to avoid giving effect to an interpretive or explanatory application note only if we determine that the note 'is inconsistent with, or a plainly erroneous reading of' the Guideline."[16] In essence, Martinez-Lugo argues that, following the Supreme Court's opinion in *Moncrieffe*, there is now an irreconcilable tension between § 2L1.2(b)(1)(A)(i)'s simple requirement of a "drug trafficking offense" and the Application Note's inclusion of "possession with intent to distribute" within the definition of that term.

## II. Moncrieffe and "Trafficking"

In *Moncrieffe*, the Supreme Court addressed whether a conviction for possession with intent to distribute marijuana under the same Georgia statute at issue here, GA. CODE ANN. § 16-13-30(j)(1), constituted an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii) such that the defendant was deportable and ineligible for discretionary relief under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*[17] Specifically, the Court considered the "aggravated felony" of "illicit trafficking in a controlled substance" under 8 U.S.C. § 1101(a)(43)(B), which includes certain nested statutory definitions:

---

[15] U.S.S.G. § 1B1.7.

[16] *United States v. Pringler*, — F.3d —, No. 12-10029, 2014 WL 4216052, at *6 (5th Cir. 2014) (citing *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915, 123 L. Ed. 2d 598 (1993)).

[17] 133 S. Ct. at 1682.

> The INA defines "aggravated felony" to include a host of offenses. § 1101(a)(43). Among them is "illicit trafficking in a controlled substance." § 1101(a)(43)(B). This general term is not defined, but the INA states that it "includ[es] a drug trafficking crime (as defined in section 924(c) of title 18)." *Ibid.* In turn, 18 U.S.C. § 924(c)(2) defines "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act," or two other statutes not relevant here. The chain of definitions ends with § 3559(a)(5), which provides that a "felony" is an offense for which the "maximum term of imprisonment authorized" is "more than one year." The upshot is that a noncitizen's conviction of an offense that the Controlled Substances Act (CSA) makes punishable by more than one year's imprisonment will be counted as an "aggravated felony" for immigration purposes. A conviction under either state or federal law may qualify, but a "state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Lopez v. Gonzales*, 549 U.S. 47, 60, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006).[18]

Thus in *Moncrieffe*, the Supreme Court addressed whether the Georgia statute constituted "illicit trafficking in a controlled substance," but the statutory scheme required application of the CSA, which treats as a misdemeanor, under 21 U.S.C. § 841(b)(4), "distributing a small amount of marihuana for no remuneration." In *Moncrieffe*, the Supreme Court, applying the categorical test, concluded that a conviction under GA. CODE ANN. § 16-13-30(j)(1) for possession with intent to distribute marijuana does not *necessarily*

---

[18] *Id.* at 1683.

constitute an "aggravated felony" under the CSA because it also criminalizes the possession of a small amount of marijuana or distribution for no remuneration:

> A conviction under the same Georgia statute for "sell[ing]" marijuana, for example, would seem to establish remuneration. The presence of remuneration would mean that paragraph (4) is not implicated, and thus that the conviction is necessarily for conduct punishable as a felony under the CSA (under paragraph (1)(D)). *In contrast, the fact of a conviction for possession with intent to distribute marijuana, standing alone, does not reveal whether either remuneration or more than a small amount of marijuana was involved.* It is possible neither was; we know that Georgia prosecutes this offense when a defendant possesses only a small amount of marijuana, *see, e.g., Taylor v. State*, 260 Ga. App. 890, 581 S.E.2d 386, 388 (2003) (6.6 grams), and that "distribution" does not require remuneration, *see, e.g.*, *Hadden v. State*, 181 Ga. App. 628, 628–629, 353 S.E.2d 532, 533–534 (1987). So Moncrieffe's conviction could correspond to either the CSA felony or the CSA misdemeanor. Ambiguity on this point means that the conviction did not "necessarily" involve facts that correspond to an offense punishable as a felony under the CSA. Under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony.[19]

Thus, the Court concluded, conviction under GA. CODE ANN. § 16-13-30(j)(1) cannot qualify as the "aggravated felony" of "illicit trafficking in a controlled substance" under the INA and therefore does not result in

---

[19] *Id.* at 1686-87 (emphasis added).

No. 13-40924

mandatory deportation. The Court went on to address the Government's arguments against the Court's approach, but at the very end of the opinion the Court paused to make a broader observation:

> This is the third time in seven years that we have considered whether the Government has properly characterized a low-level drug offense as "illicit trafficking in a controlled substance," and thus an "aggravated felony." Once again we hold that the Government's approach defies "the 'commonsense conception'" of these terms. *Carachuri–Rosendo*, 560 U.S., at ——, 130 S. Ct., at 2584–2585 (quoting *Lopez*, 549 U.S., at 53, 127 S. Ct. 625). *Sharing a small amount of marijuana for no remuneration, let alone possession with intent to do so, "does not fit easily into the 'everyday understanding' " of "trafficking," which "'ordinarily . . . means some sort of commercial dealing.'" Carachuri–Rosendo*, 560 U.S., at ——, 130 S. Ct., at 2584–2585 (quoting *Lopez*, 549 U.S., at 53–54, 127 S. Ct. 625). Nor is it sensible that a state statute that criminalizes conduct that the CSA treats as a misdemeanor should be designated an "aggravated felony." We hold that it may not be. If a noncitizen's conviction for a marijuana distribution offense fails to establish that the offense involved either remuneration or more than a small amount of marijuana, the conviction is not for an aggravated felony under the INA. The contrary judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.[20]

---

[20] *Id.* at 1693-94 (emphasis added).

11

No. 13-40924

### III. Resolving the Tension

In essence, Martinez-Lugo argues that we should apply the Supreme Court's definition of "trafficking" from *Moncrieffe* to U.S.S.G. § 2L1.2(b)(1)(A)(i)'s sentence enhancement for a "drug trafficking offense" and refuse to apply the enhancement in this case because, as the Supreme Court noted in *Moncrieffe*, conviction under GA. CODE ANN. § 16-13-30(j)(1) does not necessarily require remuneration. We agree.

The holding of *Moncrieffe* does not control this case, but the Court's commonsense reading of the word "trafficking" is highly persuasive, especially considering the context in which it was decided. *Moncrieffe* was decided under the INA, which provides by statute a penalty for "illicit trafficking in a controlled substance" and defines that term by referring to the CSA. The Court's analysis was explicitly based on the provisions of the CSA, and it could have stopped at that level. Nevertheless, in the closing passage of the opinion the Court offered a strong indication that it viewed "trafficking," in its ordinary sense, to require remuneration of some kind. Thus, the result it reached under the CSA's framework—refusing to find "illicit trafficking" where a defendant might be convicted under the statute for possession with intent to distribute small amounts of marijuana for no remuneration—was in harmony with the "commonsense conception" of "trafficking."

In this case, the enhancement is established not under the INA and statutes but under U.S.S.G. § 2L1.2(b)(1)(A)(i), which imposes a 16-level enhancement for "drug trafficking offense for which the sentence imposed exceeded 13 months." The Guideline itself does not define "drug trafficking offense" further, and no statute or other Guideline provides a controlling

12

definition of the term. The only purported definition is found in the Application Note, which includes within the definition "possession of a controlled substance . . . with intent to . . . distribute."

As illustrated by *Moncrieffe*, possession with intent to distribute under the Georgia statute may also include distribution for no remuneration. Thus, the Application Note included within the definition of "drug trafficking offense" possession with intent to distribute *for no remuneration.* Therefore, the Application Note's purported definition of "trafficking" conflicts with "the everyday understanding of 'trafficking,' which ordinarily . . . means some sort of commercial dealing."[21] As noted above, although we ordinarily apply the commentary to a Guideline as written, the language of the Guideline itself must control in the event of a conflict.[22] Accordingly, we hold that Martinez-Lugo's conviction under GA. CODE ANN. § 16-13-30(j)(1), which did not necessarily require remuneration, cannot support the 16-level sentence enhancement under § 2L1.2(b)(1)(A)(i) for a "drug trafficking offense," which according to the Supreme Court in *Moncrieffe* requires remuneration, notwithstanding anything in the Application Note to the contrary.

## CONCLUSION

For the reasons set out above, we conclude that the district court misapplied U.S.S.G. § 2L1.2(b)(1)(A)(i). Martinez-Lugo's 2002 Georgia conviction for possession with intent to distribute marijuana cannot support

---

[21] *Id.* at 1693 (citation and some internal quotation marks omitted).

[22] *Stinson*, 508 U.S. at 43 ("It does not follow that commentary is binding in all instances. If, for example, commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline. *See* 18 U.S.C. §§ 3553(a)(4), (b).").

the 16-level sentence enhancement for a "drug trafficking offense." Accordingly, we VACATE the sentence and REMAND for further proceedings consistent with this opinion.

No. 13-40924

GREGG COSTA, Circuit Judge, dissenting:

At least sometimes, the easy answer is the correct one. Although the "categorical" approach used in deciding whether prior state convictions qualify as sentencing enhancements has often flummoxed the federal courts, its application in this case leads to a straightforward result. Martinez-Lugo pleaded guilty to a Georgia indictment charging him with "unlawfully possess[ing], with the intent to distribute, Marijuana." That exact offense of "possession . . . with intent to distribute" is enumerated in the Guidelines definition of a "drug trafficking offense" that increases the offense level for illegal reentry defendants. U.S.S.G. § 2L1.2, App. Note § 1(B)(iv).

The only reason the majority departs from the obvious is *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). But *Moncrieffe* neither controls nor translates to the issue before us. As the majority explains, the question in that deporation case was whether a conviction under the Georgia Controlled Substances Act "'necessarily' [involved] conduct punishable as a felony under the" federal Controlled Substances Act. *Id.* at 1686. The Court held it did not because "distributing a small amount of marihuana for no remuneration"—which could have been the conduct that gave rise to the Georgia conviction in light of two intermediate appellate decisions upholding convictions in those circumstances—is a misdemeanor under federal law. *Id.* at 1686–87. That comparison with federal drug law mattered in *Moncrieffe* because only a "drug trafficking crime" that constitutes a felony under the Controlled Substances Act qualifies as an "aggravated felony" under the Immigration and Nationality Act (INA). *Id.* at 1683 (citing 8 U.S.C. § 1101(a)(43)(B), which incorporates the definition of drug trafficking crime in 18 U.S.C. § 924(c)).

Unlike the definition of "aggravated felony" in the INA, nothing in section 2L1.2(b)(1)(A)(i) of the Guidelines calls for a comparison between a

state drug offense and the Controlled Substances Act. *See Gastelum v. United States*, 2013 WL 3166200, at *3–4 (E.D. Cal. June 20, 2013) (stating that *Moncrieffe* is not implicated when determining whether a prior state crime qualifies as a "drug trafficking offense" under section 2L1.2 of the Guidelines). What is more, a different enhancement in the same Guidelines section applies to an "aggravated felony" as that term is used in the INA. U.S.S.G. § 2L1.2(b)(1)(C) and app. Note 3(A). Reading the immigration law's definition of aggravated felony into a different section 2L1.2 enhancement for "drug trafficking offense" thus runs counter to the principle that when a drafter "uses certain language in one part of [a legal provision] and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004).

That leaves the following language from *Moncrieffe*'s final paragraph as the only basis for finding that Martinez-Lugo's Georgia conviction does not qualify as a drug trafficking offense:

> This is the third time in seven years that we have considered whether the Government has properly characterized a low-level drug offense as "illicit trafficking in a controlled substance," and thus an "aggravated felony." Once again we hold that the Government's approach defies "the 'commonsense conception'" of these terms. *Carachuri-Rosendo*, 560 U.S., at ----, 130 S. Ct., at 2584–2585 (quoting *Lopez*, 549 U.S., at 53, 127 S. Ct. 625). Sharing a small amount of marijuana for no remuneration, let alone possession with intent to do so, "does not fit easily into the 'everyday understanding'" of "trafficking," which "'ordinarily . . . means some sort of commercial dealing.'" *Carachuri-Rosendo*, 560 U.S., at ----, 130 S. Ct., at 2584–2585 (quoting *Lopez*, 549 U.S., at 53–54, 127 S. Ct. 625). Nor is it sensible that a state statute that criminalizes conduct that the CSA treats as a misdemeanor should be designated an "aggravated felony."

*Moncrieffe*, 133 S. Ct. at 1693.  Admittedly this is broad language, but I do not read it as grafting an entirely new requirement on the section 2L1.2 "drug trafficking offense" enhancement analysis—whether a state drug offense is congruous with a federal felony drug offense—for at least two reasons.

First, context matters and *Moncrieffe* as well as the two cases cited in that passage are immigration ones in which the INA expressly required the Court to determine whether a state drug conviction necessarily constituted a felony under federal drug laws.  *See Carachuri-Rosendo v. Holder*, 560 U.S. 563, 570 (2010) ("[F]or a state conviction to qualify as an 'aggravated felony' under the INA, it is necessary for the underlying conduct to be punishable as a federal felony.");  *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006) (holding that because there "is no reason to think Congress meant to allow the States to supplant its own classifications when it specifically constructed its immigration law to turn on them[,] . . . a state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law").

Second, *Moncrieffe*'s concern about serious consequences flowing from low-level drug offenses in the immigration context is handled differently in the Guidelines.  In 2003, the Sentencing Commission addressed this very issue by amending section 2L1.2 to use the length of the prior state sentence as a proxy for its seriousness.  *See* U.S.S.G. App. C, Vol. 2, amend. 632 (2013) ("This amendment responds to concerns . . . that § 2L1.2 . . . sometimes results in disproportionate penalties because of the 16-level enhancement . . . .").  The Guideline uses a 16 point enhancement for a prior "drug trafficking" felony for which the sentence imposed exceeded 13 months; a 12 point enhancement for a prior "drug trafficking" felony for which the sentence imposed was 13 months or less; and a 4 point enhancement for any other felony.  *See* U.S.S.G. §

2L1.2(b)(1)(A)–(D).    Classifying a state conviction as a "drug trafficking offense" under section 2L1.2(b)(1) only when that state's drug trafficking case law categorically comports with the federal Controlled Substances Act disrupts that attempt to calibrate the Guidelines to the seriousness of the prior drug offense based on the length of the sentence.  For example, under the majority's reasoning, a defendant who received a fifteen year sentence for a prior Georgia possession with intent to distribute offense would receive only a four point enhancement (as a felony, but not a "drug trafficking offense").  But a sixteen point enhancement would apply to a defendant with a prior drug offense that resulted in a fifteen month sentence so long as the state where that conviction took place does not have a couple intermediate appellate court decisions upholding convictions for distribution that did not involve remuneration.

In addition to causing unjustified sentencing disparities, extending *Moncrieffe* to govern section 2L1.2(b)(1)'s definition of "drug trafficking offense" increases the complexity of applying this enhancement, which is perhaps the most commonly litigated sentencing enhancement[1] and one that is applied on an almost daily basis in the overburdened border courts where this case arose.  Application of the section 2L1.2(b)(1) enhancements for prior drug offenses will now seemingly require two inquires.  The first inquiry: whether the state drug offense meets the definition of "drug trafficking offense" in the Guidelines commentary.  The second: whether the conduct giving rise to the state offense would necessarily constitute a felony under the Controlled

---

[1] According to the Federal Sentencing Commission, there were 13,887 applications of a special offense characteristic adjustment under § 2L1.2 in FY 2013.  U.S.S.C. *Use of Guidelines and Special Offense Characteristics* 52 (2013).  Over 2,000 of those applications were for a "drug trafficking offense" under subsections (b)(1)(A)(i) and (ii).  *Id.*  To provide further context, the relevant Guideline, § 2L1.2, represented 24.6% of all Guidelines applications in FY 2013.  *Id.*

Substances Act. One level of categorical analysis can be vexing enough, *see, e.g., Perez-Gonzalez v. Holder,* 667 F.3d 622, 624 (5th Cir. 2012) (Jones, J., dissenting) ("part[ing] company" with the majority's application of the "modified categorical approach" because "the information filed against the petitioner in the Montana court states exactly what crime [the defendant] committed and that the likelihood that the Montana statute is employed outside the categories of rape or child sexual abuse is minimal"); a second further complicates this notoriously muddy area of the law. No other court of appeals has yet required that courts undertake both these inquiries.

Of course, given how consequential sentencing decisions are, courts should not shy away from hard work and resolving difficult questions when the law compels courts to do so and the result is a more sensible sentencing system. Because neither is the case here, I would affirm the district court.